[Sac. No. 4327.   In Bank.—September 12, 1930.]

H.  C.  HIETT  et al., Respondents,  v.  THE  INLAND
    FINANCE  CORPORATION  (a  Corporation),  Appel-
    lant.

294

Louttit & Marceau for Appellant.

Bronson, Bronson & Slaven for Respondents.

CURTIS, J.—Action brought for the cancellation of a note and mortgage, executed by the respondents in favor of The Inland Finance Corporation, hereinafter referred to as appellant, on the alleged ground that the same were executed and delivered under fear and menace resulting from threats made by the president of the appellant that unless said note and mortgage were executed he would prosecute Merton G. Hiett, the son of respondents, for embezzlement. The appellant denied that any such threats were made or that the note and mortgage were executed as the result of such threats. The action was tried, and the court found upon the issues made by the pleadings in favor of the plaintiffs and respondents.

The facts out of which this controversy arose are, in brief, as follows: Merton G. Hiett, the son of the respondents, who was then about twenty-three years of age, was in the automobile business at Modesto, California, with L. H. McFarland and M. M. McFarland, under the firm name of McFarland & Hiett. The appellant had been furnishing money to said firm for the purchase of automobiles to be sold in said business under an agreement whereby appellant retained the title to said automobiles until they were sold, at which time appellant was to receive a certain specific portion of the price for which they were sold. The business did not prosper and as one of the results thereof the firm of McFarland & Hiett failed to pay to appellant

various sums of money due the appellant from the sale of automobiles by said firm. On September 22, 1925, there was due appellant from said firm on automobiles so sold $4,486.80. On that date appellant accepted two notes from the firm in settlement of this indebtedness—one for $1,000 and the other for $3,486.80. The first of these was paid. The other was secured by deed to certain real property and a pledge of personal property. Subsequent to September 22, 1925, the firm became further indebted to appellant in the sum of $4,732.12. On November 17, 1925, a meeting was held at the office of Mr. Fitch, an accountant in Modesto, at which were present Mr. H. C. Hiett, Merton G. Hiett, his son, Mr. Fitch, Mr. Neil I. Ross, agent and president of appellant corporation, Mr. Louttit, attorney for the appellant, and Mr. Dubois, a factory representative. At this meeting the financial situation of the firm was discussed. After the meeting broke up, Mr. Ross accompanied Mr. H. C. Hiett to his ranch in order to explain to Mrs. Hiett, wife of H. C. Hiett, the involved affairs of the firm with a view to securing her consent to a mortgage of the ranch as security for the indebtedness of the firm to the appellant. The next afternoon Mr. H. C. Hiett and his wife, Addie M. Hiett, and the son, Merton G. Hiett, executed a note for $8,732.12, and H. C. Hiett and Addie M. Hiett executed a mortgage on their ranch as security for the payment of the note. This sum of $8,732.12 was made up of the $4,732.12 already due appellant and the sum of $4,000 to be advanced by appellant to carry on the business. At the same meeting an agreement was signed between appellant and Merton G. Hiett, who was to take over the firm business from the McFarlands, whereby the appellant agreed to advance $4,000 to carry on the firm business, and Merton G. Hiett agreed that the business should be carried on by a manager to be named by the appellant. Shortly thereafter, and as a part of the same transaction, an agreement between Merton G. Hiett and the McFarlands was entered into whereby the existing partnership was dissolved and Merton G. Hiett agreed to assume certain partnership obligations in consideration for a transfer to him of the partnership assets. After the meeting of November 18, 1925, the business was conducted as the Modesto Star Sales Co. by the manager appointed by the

appellant. It continued to show a loss and on March 12, 1926, was sold to another firm. By letter of May 13, 1926, Ross informed Mr. H. C. Hiett that the original note of $3,486.80 had been marked paid and the sum of $5,365.11 had been credited on the note for $8,732.12, leaving a balance of $3,367.01 due upon the note secured by the mortgage. In November, 1926, Ross wrote to Mr. H. C. Hiett insisting that a payment be made upon the note. On December 6, 1926, this action to have said note and mortgage canceled was commenced by respondents. Appellant filed a cross-complaint against H. C. Hiett, Addie M. Hiett and Merton G. Hiett for $3,367.01, the amount alleged to be due on the promissory note for $8,732.12. An order of the court was made bringing in Merton G. Hiett as a party defendant and his answer to the cross-complaint was filed. A judgment in favor of H. C. Hiett, Addie M. Hiett and Merton G. Hiett that said promissory note for $8,732.12 and the mortgage be discharged and canceled was rendered by the trial court. From this judgment the defendant has appealed.

On appeal the appellant presents three grounds for a reversal of the judgment: (1) The findings are unsupported by the evidence; (2) the respondents failed to restore to appellant the money advanced by appellant, and (3) respondents are guilty of laches.

There is ample evidence, direct and unequivocal, in the record before us to support the findings of the trial court that the execution of the note and mortgage in suit was obtained from the respondents by means of menace. H. C. Hiett testified that about a month prior to the giving of the note and mortgage his son, Merton, came to him with a request for $333.33, telling him that he was in trouble with the finance company, and that unless he could obtain $333.33 to pay his share of a promissory note for $1,000, he would be put "in the jug." The money requested was loaned by H. C. Hiett. H. C. Hiett testified that on November 17, 1925, about a month later, he was requested by his son to attend a meeting at Mr. Fitch's office at which the financial situation of the firm was discussed. At that time he was told by Mr. Ross, president of the finance company, that "he had loaned them (meaning the firm) money, and that they had misused his money. . . . They had embezzled

money, rather, that is the word used, and unless there was
something done, that he could put them in the peniten-
tiary.'' Hiett further testified that during the conversa-
tion at the ranch between Mr. Ross and Mrs. Hiett, that
''Mr. Ross explained to her that the boys, the McFarland
boys and Merton, had used his money and they had also
embezzled his money and that unless there was some-
thing done, . . . unless it could be fixed up satisfactory,
he would have to put them in the penitentiary, they had
committed an offense.'' In response to a direct query as to
what was the inducement which motivated him in signing
the note and mortgage, he testified, ''I could not stand to
see my son go to the penitentiary, which Mr. Ross had made
us believe that he could do, and that I would give anything
to keep my boy out of there. I couldn't stand to see my
boy go to the penitentiary.''

Mrs. Hiett testified that Mr. Ross told her when he visited
at the ranch that the McFarland boys and Merton ''had
embezzled his money and that if it wasn't fixed up, 'I can
put them in the penitentiary' and 'that is what I will have
to do.' '' She testified that the reason she signed the note
and mortgage was ''to keep him (her son) out of the peni-
tentiary.''

Merton G. Hiett testified that during one of the conver-
sations relative to the business of the firm, Mr. Ross said,
''You know you boys are guilty—you know you boys have
committed a felony punishable by penitentiary imprison-
ment.'' He testified that the reason he signed the notes
was because of the trouble and embarrassment which would
come if he did not. When questioned as to what trouble and
embarrassment he referred to, he said, ''There was a charge
of embezzlement which I did not feel like . . . I was guilty
of.''

This testimony, standing alone, is sufficient to support
the findings. Even though unsupported by other evidence,
the court was entitled to believe these witnesses to the
exclusion of all others. The testimony of these witnesses is,
however, confirmed and corroborated by the testimony of
Ross, who, although he denied that any threats had been
made, testified that he had explained to Mrs. Hiett at the
ranch that the boys had sold cars which belong to the com-
pany and had not paid for them and ''that it was a very

grave offense." He also testified, "I may have told her it was a felony, and a felony means penitentiary imprisonment." Further corroboration of the fact that the fear that their son would be sent to the penitentiary was the inducing cause of the execution of the note and mortgage by Mr. and Mrs. H. C. Hiett is found in the testimony of Mr. Louttit, attorney for the appellant in the transaction under consideration, who testified that Mr. H. C. Hiett, immediately after the papers had been read and explained to him, asked whether or not the boys were going to be prosecuted. Moreover, the record before us conclusively shows that the respondents understood practically nothing of the business details and the arrangement to be made and that the only definite fact which they did understand, and which was uppermost in their minds during the transaction, was the fact that by giving their ranch as security for the indebtedness due appellant from the firm, their son would escape the danger of going to the penitentiary.

It is apparent, therefore, that whatever may have been the actual language used, the thought was in fact conveyed to the father and mother that their son had committed the crime of embezzlement and was in danger of being sent to the penitentiary and that unless they did give the note and mortgage to secure the finance company from loss, that it would take steps to have him sent to the penitentiary. This being so, there can be no question that the fear thus instilled was the inducing cause for the signing of the note and mortgage. No more potent threat than a threat of imprisonment of their son in a penitentiary could probably have been made.

The evidence is likewise sufficient, we think, to support the finding of the trial court that Merton G. Hiett, at the time of the signing of the note, was acting under fear of prosecution for a criminal offense.

The contention of appellant that the impelling motive of the Hietts in signing the note and mortgage was not the fear that their son would go to the penitentiary, but their desire that their son should gain control of the firm's business, is negatived not only by the foregoing evidence, but by the significant fact, testified to by Ross himself, that Mr. H. C. Hiett did not have any faith in his son's ability and by the statement made by Hiett at the time of the

signing of the note and mortgage, "I can't possibly pay $12,000." It is most improbable that he would incur an obligation which he knew he could not pay, thereby risking his entire property and his sole means of livelihood, to back a twenty-three year old son in whose business ability he concededly had no faith in a business venture which had already proven itself to be very unprofitable.

Moreover, even if we concede, as claimed by appellant, that it is inherently improbable that the negotiations could have originated and terminated in the two days claimed by respondents, and that respondents were not, therefore, "rushed" into the transaction, this fact does not conclusively negative the conclusion that the respondents' consent at the time was not free from menace. In view of the nature of the threat, it is quite conceivable that even though the negotiations continued for some little time, that nevertheless the fear instilled in respondents' mind was present and uppermost and constituted the impelling motive for the execution of the instruments. Neither does the fact that the appellant was represented in the transaction by a reputable attorney conclusively negative the fact that such threats were made. Although it may be taken for granted that Mr. Louttit, a reputable attorney, did not himself state to the respondents that unless they secured the debt their son would be sent to the penitentiary, and it may also, we think, be taken for granted that had he known that such threats were used that he would have refused to take any part in the transaction, nevertheless, we are of the opinion that such threats may have been made outside of his presence and that he was not cognizant of the fact that they had been made.

With reference to the second ground that respondents have failed to restore to appellant the money advanced by appellant, it will suffice to say that no money was advanced to H. C. Hiett or Addie M. Hiett and that neither H. C. Hiett nor Addie M. Hiett ever received anything of value from the transaction. The debt of $4,732.12 which they assumed by signing the note had already been incurred by the firm of McFarland & Hiett, and the $4,000 subsequently advanced by appellant after the transaction of November 18, 1925, was advanced to the Modesto Star Sales Company, technically owned by Merton G. Hiett, but ac-

tually managed and controlled by a manager appointed by appellant and acting under the direct orders of appellant. Having received nothing, they had nothing to return.

With reference to Merton G. Hiett, the sale price of the Modesto Star Sales Company covered not only the original note of $3,486.80, which had been executed by the firm of McFarland & Hiett, but also more than covered the $4,000 advanced by appellant to keep the business going after November 18, 1925. The $4,732.12 incorporated in the note for $8,732.12, signed by Merton G. Hiett under fear of imprisonment, had already been advanced to the firm prior to November 18, 1925, and was not, therefore, obtained as a result of the signing of this note. ■ The payment of this debt is not, therefore, a condition precedent to the rescission of the note.

None of the facts and circumstances of this case warrant an application of the doctrine of laches. ■ The doctrine of laches is not technical and arbitrary and is not designed to punish a plaintiff. It can only be invoked where a refusal would be to permit an unwarranted injustice. Whether or not the doctrine applies depends upon the circumstances of each case. (*Hovey* v. *Bradbury*, 112 Cal. 620 [44 Pac. 1077].) ■ In the instant case, we do not feel that the time elapsing before the commencement of this action was unreasonable. Respondents commenced the action to cancel the note and mortgage in less than a month after the note became due and the respondents became aware of the fact that appellant was going to insist upon payment. Moreover, during this entire period of time the threat of imprisonment which was the motivating cause of the execution of the note and mortgage remained a potential factor to deter the respondents from instituting this suit. Appellant has neither shown, nor attempted to show, that its rights have been prejudiced by the alleged delay. The defense of laches is not, therefore, available.

The judgment is affirmed.

Langdon, J., Seawell, J., Richards, J., Shenk, J., Preston, J., and Waste, C. J., concurred.