[Civ. No. 13260.   Second Dist., Div. One.   Jan. 2, 1942.]

PERRY Z. BENTON SWART, as Administrator, etc., Appellant, v. MAY EMMA JOHNSON et al., Respondents.

Hill, Morgan & Bledsoe for Appellant.

Prentiss Moore, M. C. Schrager, Swanwick, Donnelly & Proudfit, Robert Proudfit, Donald O. Welton and C. V. Caldwell for Respondents.

DRAPEAU, J., pro tem.—This action, and *Swart v. Security-First National Bank of Los Angeles*, Civ. No. 12703, (*ante*, p. 824 [120 Pac. (2d) 697]), this day decided, were tried together, it having been stipulated that the testimony taken at the trial might go to both actions, but each action was to be considered and decided separately.

Inasmuch as we have recited in the opinion in that case the facts relative to the marriage of the plaintiff and his wife; their living together; her mental illness, and the detailed testimony of witnesses who established that she was incompetent at the time of the transactions in question in the two cases, we will not repeat them here.

This appeal has to do with title to an apartment house, called the Durant apartment. In 1936 Mr. and Mrs. Swart exchanged three parcels of real estate for this apartment house. In addition to the real property thus exchanged, $4,000 in cash was paid by Mr. and Mrs. Swart as further consideration. This $4,000 was checked out of a joint bank account of Mr. and Mrs. Swart. One of the three parcels of real property exchanged was in Mrs. Swart's name alone, and Mr. Swart did not sign the deed for that. The other two parcels were in both their names as joint tenants. In one of these parcels Mr. Swart had put work and labor and funds

of his own. When the deeds passed, title to the apartment house was taken in Mr. and Mrs. Swart as joint tenants.

On May 5, 1937, the plaintiff made a quitclaim deed of the apartment house property to the decedent, and on August 25, 1937, the decedent conveyed this property to the California Trust Company to be held in a trust in which plaintiff was not mentioned. Thereafter, and on August 18, 1938, California Trust Company by deed, under direction of the trust, conveyed it to the defendant, May Emma Johnson.

By this instrument, dated August 25, 1937, and those referred to in the foregoing opinion, the decedent attempted to terminate any and all rights which the plaintiff might have had in or to any of her property.

After the death of decedent, plaintiff filed an action in the superior court, in his representative capacity as administrator of the decedent's estate, and against May Emma Johnson, Robert E. Johnson and California Trust Company, seeking to set aside conveyances of the apartment house which vested title thereto in May Emma Johnson.

The trial judge stated that ''The defendants . . . having pleaded as an affirmative defense the facts showing the conveyance, so that it is within the issues, my judgment is that that affirmative defense has been sustained by a preponderance of the evidence, and my conclusion is that, . . . judgment will have to be for the defendants.''

As has been stated, there are two cases here upon appeal. Both cases were tried together, and it was stipulated that the testimony might be considered as applicable to either or both cases. Appeals from the judgments rendered in the two cases are before this court, and are being reviewed together, in accordance with the stipulation of the parties; but the stipulation reserves the right to have each case decided separately, and we are filing a separate opinion in each case.

The findings as to incompetency are somewhat different in form from those in the *Swart* v. *Security-First National Bank of Los Angeles* case, *supra*.

Finding V is that the decedent was suffering from an insane delusion and became obsessed with the idea that the plaintiff was attempting to get her property and ''that the transfer and conveyance'' of the apartment house property on August 25, 1937, ''was solely the result of such insane delusion''; but that on said date the decedent was not ''wholly without understanding.''

Finding VIII is that plaintiff was appointed administrator December 22, 1937; that he had full knowledge of the trust with the California Trust Company, and that the defendant, May Emma Johnson, was the beneficiary; and that he failed to take any action to claim said real property or to set aside the conveyance from California Trust Company to May Emma Johnson until the filing of this action, December 10, 1938.

Based upon these findings, judgment was rendered against the plaintiff, as administrator, and from this judgment and an order denying a new trial, the plaintiff appeals.

This appeal is based upon the contention that the findings do not support the judgment as rendered. Respondents argue that the findings do support the judgment, in that there is a finding of laches which bars the plaintiff's right to set aside the deed, and in that the finding of incompetency of the decedent is not supported by the evidence.

■ The latter proposition has already been discussed at length. We have demonstrated that we think there is ample evidence in the record to support the finding of the trial court thereon. The finding in the trust case was relative to her incompetency on May 29, 1937, when she attempted to amend the trust. The deed here in question is dated August 25, 1937. We are convinced that the evidence shows the decedent was suffering from a form of insanity which became progressively worse, and that the proof of her incompetency on the latter date is stronger, if anything, than it is as to her incompetency on the former date.

We think the trial judge in rendering his opinion from the bench must have overlooked the primary point upon which a decision of both cases had to be reached, namely: That of the competency or incompetency of the decedent on the date of the amendment to the trust, and on the date of the deed attempting to convey the apartment house property to the defendant, California Trust Company. And we think that the finding of incompetency of the decedent on the date the deed was made requires a judgment setting it aside.

■ While it is not necessary to a decision in this case, nevertheless we have concluded that something should be said about the circumstances when the plaintiff's quitclaim deed of the apartment house was made to the decedent. The deed was prepared in the office of attorneys for the decedent after the divorce complaint had been filed and served; it was there

presented to the plaintiff, when he also signed an agreement denominated a "Mutual Release," and was paid by counsel for decedent $400.

The plaintiff testified that he signed these instruments and later filed an answer but made no contest to the divorce case, because he felt that if he crossed the decedent it would aggravate her mental condition, and that he thought if he did not oppose her it might help her to get over her trouble. It is evident the trial court believed this testimony and that the plaintiff had an entirely proper and laudable reason for what he did in these respects.

The plaintiff was not represented or accompanied by counsel when the quitclaim deed and the release were presented to him for signature, in the office of his wife's lawyers. This situation illustrates a fact which should be evident to all members of the bar of this state—that in fairness to both parties concerned, when negotiations for settlement of property matters between husband and wife are on hand, both parties should at all times be represented by counsel.

In this case we find that unquestioned property rights which the plaintiff had in the apartment house were attempted to be taken away from him, that a long period of harmonious relationship as husband and wife were brushed aside, and that purported statements made by the plaintiff were used later on in the trial to embarrass and discredit him. Members of the bar should never forget that they are ministers of justice, and that when agreements between husbands and wives are negotiated, and one of the negotiating parties is without benefit of counsel, justice in the settlement of their property affairs can seldom be had.

█ This then brings us to a consideration of laches, if any, involved. In the trust case, upon the same evidence, the trial court found there were no laches. In the apartment house case, it may be argued that finding VIII is a finding that there were laches. We think the most that can be said of this finding is that as to laches, it is uncertain.

Assuming it to be a finding of laches, we think the proof is directly contrary to any finding of laches.

"Laches is defined as 'Such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an

adverse party, operates as a bar in a court of equity.' . . . 'In determining what will constitute such unreasonable delay, regard will be had to circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant, or of other persons, have been prejudiced by such delay.' '' (*Cahill* v. *Superior Court,* 145 Cal. 42, 46 [78 Pac. 467].)

The record discloses that the plaintiff was appointed ad-. ministrator December 22, 1937; that the defendants knew his counsel were engaged in making a study of the case, and were considering taking some action toward setting aside the deed; and that on October 27, 1938, they were definitely advised that some action would be brought; and that the complaint was filed November 10, 1938. Under these circumstances, we do not think there is any showing which would support a finding of an omission to assert a right, or a delay in the assertion of that right sufficient to charge the plaintiff with laches. And in this case we think that no one, under any circumstances, has been prejudiced because the complaint was not filed sooner.

''The doctrine of laches is not technical and arbitrary and is not designed to punish a plaintiff. It can only be invoked where a refusal would be to permit an unwarranted injustice. Whether or not the doctrine applies depends upon the circumstances of each case.'' (*Hiett* v. *Inland Finance Corp.,* 210 Cal. 293, 300 [291 Pac. 414].)

In view of the situation which thus presents itself to the court, the provisions of section 956a of our Code of Civil Procedure are applicable here. This section permits the reviewing court to make findings of fact contrary to, or in addition to, those made by the trial court.

Therefore, we adopt the findings of the trial court as to laches in the trust case, and find that the plaintiff in the apartment house case was not guilty of laches. This finding, together with the finding of the trial court of the incompetency of the decedent, requires us to reverse the judgment of the superior court and to send this case back to that court, with directions to enter judgment setting aside the deed dated August 25, 1937, designating Pearl T. Swart as grantor to California Trust Company, a corporation, as trustee; setting aside the deed dated July 19, 1938, from California Trust Company, a corporation, as trustee, grantor, to May Emma Johnson; requiring May Emma Johnson to account to plain-

tiff as administrator of decedent's estate for the rents, issues and profits of the apartment house received by her, less taxes and other proper charges attributable thereto; and declaring that no defendant has any claim to, or interest in, the apartment house property; and declaring that the plaintiff as administrator is the owner of said real property; and for his costs of suit. It is so ordered. Appellant shall not recover his costs on appeal against respondent California Trust Company.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 27, 1942, and the judgment was modified to read as above.

Respondents' petition for a hearing by the Supreme Court was denied March 2, 1942. Gibson, C. J., and Shenk, J., voted for a hearing.