[Civ. No. 12703.   Second Dist., Div. One.   Jan. 2, 1942.]

PERRY Z. BENTON SWART, Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation) et al., Appellants.

Prentiss Moore, M. C. Schrager and C. V. Caldwell for Appellants.

Hill, Morgan & Bledsoe for Respondent.

DRAPEAU, J. pro tem.—On June 30, 1928, in the "Little Church Around the Corner" in the city of New York, Perry Z. Benton Swart and Pearl Tinsley Johnson were married. It was the third marriage for Mrs. Swart, her two former husbands having died. From her first husband's estate she received a large amount of money and property, the income of which was sufficient to enable her to live in affluent circumstances. This income was used by Mr. and Mrs. Swart in maintaining a fine home in Los Angeles, and in extensive domestic and foreign travel.

For the purpose of taking care of a portion of her property, investing and re-investing it, Mrs. Swart from time to time deposited certain assets with corporate trustees, reserving a power of appointment and disposal over the income and corpus of the trust estates.

On June 17, 1929, Mrs. Swart caused one of these trusts which she had with the Security-First National Bank to be amended so that if Mr. Swart survived her, he was to be paid the trust income for life, with remainder to certain named beneficiaries. On February 21, 1935, Mrs. Swart again caused this trust to be amended, providing that upon her death, her husband was to receive all of the corpus of the trust estate,

except a $2,500 gift out of it to be paid to Bernard Claggett, her chauffeur.

Mr. and Mrs. Swart lived happily together until the latter part of 1936, when a serious situation developed for them both. She changed. Instead of conducting herself as an intelligent, well-groomed woman, she became uncleanly and careless of her personal appearance; she drank more than was good for her; she became more and more irrational, until she died October 24, 1937, in a private sanitarium, hopelessly insane.

For the sake of brevity we will hereafter refer to Mr. Swart as the plaintiff, and to Mrs. Swart as the decedent.

As the malady of this unfortunate lady progressed, her love and affection for her husband changed to suspicion and hatred, until on May 4, 1937, without any previous intimation to him, she filed suit for divorce in the Superior Court of Los Angeles County, and caused due service of complaint and summons to be made.

On May 29, 1937, the decedent made a last will in which she did not mention her husband. On May 29, 1937, decedent caused the trust to be amended, substituting a brother of her first husband as beneficiary in place of the plaintiff. By these instruments, dated May 29, 1937, and the conveyance of an apartment house, to be discussed in the opinion following, the decedent attempted to terminate any and all rights which the plaintiff might have had in or to any of her property.

After the death of decedent, plaintiff filed an action in the superior court against the defendants, to set aside the exercise of the power of appointment by the decedent terminating his interest in the trust.

This action, and *Swart* v. *Johnson,* Civil No. 13260 (post, p. 829 [120 Pac. (2d) 699]), this day decided, were tried together, it having been stipulated that the testimony taken at the trial might go to both actions, but each action was to be considered and decided separately.

Many court days were consumed in taking testimony, and in argument. The trial judge in an oral opinion from the bench, stated that he was convinced that during the last few months of her life the decedent became obsessed with the insane delusion that the plaintiff was endeavoring to get some or all of her property away from her, and that there was no substantial evidence of any effort on the plaintiff's part to do this, and directed that findings and judgment be pre-

pared setting aside the purported exercise of the power of appointment by which the trust was amended to terminate plaintiff's interest.

In addition to findings contrary to affirmative defenses and covering facts relative to the trust, its institution and its terms, the trial court found that the amendment of May 29, 1937, was in the nature of a testamentary disposition by the decedent of the corpus of the trust, and that the decedent "was not in full possession of her mental faculties," and had an insane delusion that her husband was trying to secure her property. Inasmuch as laches must be discussed in our opinion with reference to the apartment house, we may say here that in the pending case the trial court found specifically that the plaintiff and his attorneys had filed and prosecuted the action to judgment with reasonable diligence and that the defendants had suffered no delay, and that plaintiff was not guilty of any laches.

In accordance with the findings, judgment followed that the purported amendment to the trust be set aside and cancelled and that the balance of the assets held by the trustee be paid to the plaintiff.

From this judgment and order denying a new trial, the defendants in the trust case have appealed. This appeal is based upon the contention that the evidence was insufficient to support the court's finding of incompetency, and that there was undisputed proof that there were sufficient facts upon which the decedent might have formed the belief that her husband was trying to get her property away from her.

A careful review which we have made of all of the testimony has brought us to the very definite opinion that there is in the lengthy transcript of evidence brought before this court ample evidence to sustain the finding of incompetence of the decedent, as made by the trial court.

The plaintiff husband of the decedent testified that in his opinion she became insane in 1936. His reasons were that in talking she could not enunciate her words clearly; she became careless of her dress and person; she began to drink to excess; she did not understand business deals; she began to use sleeping tablets to excess; she did not seem to know what she was doing or what she was saying; she had hallucinations and delusions; she thought everybody was trying to rob her and persecute her. And the plaintiff further testified that this

condition continued and grew worse, although he tried to protect the decedent. After the separation the decedent wrote plaintiff letters accusing him of stealing her things, which accusations were not true at all, and called him on the telephone to berate him.

Two intimate acquaintances testified that in their opinion decedent was not right mentally, giving their reasons.

Dr. Victor Parkin, a medical doctor and an admitted expert psychiatrist, testified that when the decedent died she was insane; and in reply to a hypothetical question setting out the condition of the decedent as contended by the plaintiff, that, in his opinion, she was insane at the time the amendment to the trust was made.

Bernard Claggett, the decedent's chauffeur, testified that during the period in question, the decedent's mouth would quiver and she would ramble; she foamed at the mouth in the mornings; after the divorce proceedings were instituted, she asked the witness to carry a gun to protect her from her husband; on May 27, 1937, two days before the trust was amended, decedent was in a terrible condition, she had all the water in the laundry turned on and was putting colored blankets into the washing machine, and a whole pillow, and the sheets were coming out all colored and the decedent was wringing wet, and the witness put her to bed and cleaned up the mess; that on another occasion the decedent pulled up the growing flowers in the yard, and it took the witness hours to clean it up. This witness testified that the plaintiff had always treated the decedent in a kindly manner.

Also on rebuttal, ladies in a beauty parlor, who qualified as intimate acquaintances, testified to mental difficulties of the decedent.

It is, of course, true that there were witnesses who appeared for the defendants and expressed their opinion that she was sane, giving their reasons therefor. We are not reciting this testimony, because we think that the brief résumé of the testimony above given demonstrates that there is substantial evidence to support the finding of incompetency upon which the judgment in this case is based.

In passing, it may be said that most of the defendants' witnesses were persons with whom the decedent transacted business—business out of which these witnesses, or their principals, were making a profit—and that at the trial the defendants failed to call the decedent's brother or any of

her relatives-in-law, who were in attendance upon her after she filed her action for divorce against her husband. Also, the evidence discloses that after her break with her husband, and while one of her brothers was living with her, she quarreled with her brother, too.

Appeal from the order denying a new trial is dismissed. The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 27, 1942, and appellants' petition for a hearing by the Supreme Court was denied March 2, 1942.