[Civ. No. 13992.   First Dist., Div. One.   June 10, 1949.]

A. B. GREGORY, Appellant, v. VIVIAN GREGORY, Respondent.

J. Rainey Hancock for Appellant.

Robert Beresford and David H. Adams for Respondent.

BRAY, J.—Appeal by plaintiff from an order of the superior court setting aside a judgment of divorce and permitting defendant to file an answer and cross-complaint, made on a motion under section 473 of the Code of Civil Procedure.

The sole question involved is whether the trial court in making such order abused its discretion.

### RECORD

In a divorce action brought by plaintiff husband against defendant wife, defendant agreed to a written property settlement, and signed an unverified answer and stipulation waiving notice of trial. An interlocutory judgment of divorce was entered June 27, 1947, granting a divorce to plaintiff on the ground of cruelty, and approving the property settlement agreement, which also provided for joint custody of the minor child of the parties, physical custody to be in the mother during the school term, and in the father during the summer, plus reasonable visitation rights. Thereafter a dispute arose concerning the custody of the child, and the following events occurred: (1) October 16, defendant obtained an order to plaintiff to show cause why he should not be punished for contempt for allegedly violating the custody order. (2) October 21, plaintiff served a notice of motion to modify the interlocutory judgment to allow the child to remain with plaintiff during the school term then beginning. (3) October 22,

defendant notified plaintiff that she rescinded the property agreement because of mistake, fraud, duress, etc. (4) On October 24, defendant served upon plaintiff a notice of motion to set aside the interlocutory judgment on the ground that it was entered through mistake, inadvertence and excusable neglect. On the hearing of this motion the court set aside and vacated the judgment, granting defendant leave to file the answer and cross-complaint accompanying the motion. Plaintiff appealed from this order.

## LAW

The facts upon which the application to set aside the judgment are based are controverted. Before examining them, it is well to consider the law applicable to a motion made, as here, under section 473 of the Code of Civil Procedure, which provides, in part: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." As said in *Rehfuss* v. *Rehfuss,* 169 Cal. 86, 92 [145 P. 1020]: "The rules of practice applicable to divorce actions differ in many respects from those which govern other actions. In an action for divorce, upon very slight showing the court will set aside a default, if application for relief be made in due time. . . . The law is at all times very solicitous to preserve the integrity of the marriage relation. That relation is the basis of the family, the foundation of society. . . . An action for divorce concerns not only the parties immediately interested, but also the state. . . . It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together."

In *Hambrick* v. *Hambrick,* 77 Cal.App.2d 372, 377 [175 P.2d 269], the court said: "As has been said repeatedly: '. . . An appellate court, owing to the remedial character of the statute and the policy of applying it liberally to permit an opportunity to present a substantial defense, listens more readily to an appeal from an order denying relief than to one granting relief . . .' (14 Cal.Jur. 1076; see, also, *Waybright* v. *Anderson,* 200 Cal. 374, 377 [253 P. 148], *supra,* and cases cited; *Brill* v. *Fox,* 211 Cal. 739, 743-4 [297 P. 25]). Even in a case where the showing under section 473 is not strong, or where there is any doubt as to the setting aside of

a default, such doubt should be resolved in favor of the application (14 Cal.Jur. p. 1076).''

'' '. . . the proper decision . . . rests almost entirely in the discretion of the court below, and appellate tribunals will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion.' '' (*Armstrong* v. *Armstrong*, 81 Cal.App.2d 316, 320 [183 P.2d 901], quoting from *Miller* v. *Lee*, 52 Cal.App.2d 10, 15 [125 P.2d 627].)

With these rules in mind, our task is to determine whether there is any substantial evidence to show that the interlocutory judgment was entered through the mistake, inadvertence or excusable neglect of defendant. If there is not, we would have to find that the court abused its discretion. If there is such substantial evidence, we would have to find that the court did not abuse its discretion.

### FACTS

Resolving in favor of defendant all conflicts in the evidence, there is substantial evidence of the following facts: Plaintiff is a professor in the Modern Language Department at San Jose State College. Defendant is a graduate of San Jose State College and the University of California. The parties married in 1937. The only child, Paul, was born in 1940. During the marriage defendant worked at times as a substitute teacher. For the last eight years of the marriage there had been no sexual intercourse between the parties. Each party blames the other as the cause. On March 31, 1947, plaintiff picked up at the general delivery window in the San Jose Post Office a letter addressed to defendant from one Townsend, a neighbor, who was in Chicago at the time. The language of this letter is equivocal. It might support the incriminating meaning given it by plaintiff, or it might support the explanation of it given by defendant and the writer to the effect that there were no improper relations between them, and that the writer had misunderstood defendant's attitude toward him. It later developed that Townsend wrote defendant another letter not so equivocal or incriminating.

Plaintiff did not reveal his possession of the first letter to his wife, but he immediately withdrew all funds from their joint bank account and then told her that he ''knew everything'' and that they both should see his lawyer the following day to ''settle all our affairs.'' He stated that he would take the house and everything, and that if she fought, all the property would be used up in needless litigation.

Some time later he told her that he had intercepted the letter and believed she was having an affair. Defendant testified that she had never met Townsend except by chance, when they were both out walking on the public streets, and that most of the neighbors had had similar meetings with Townsend while he walked his dog. During one walk she had told him about her unhappy home life. He misconstrued her emotional condition and asked her to write him. She wrote a note to him and his reply was intercepted by plaintiff. Both defendant and Townsend denied that they had had an intimate relationship.

Plaintiff told her that if she got the divorce she would have to pay for it. She replied that it did not matter who obtained it; he could if he wished. She even told a friend that plaintiff was going to get a divorce and that she was not going to fight it. Plaintiff stated that his lawyer would handle it. He had two conferences with the lawyer. (The attorney of record on this appeal is not the lawyer herein mentioned.) Defendant then visited the lawyer. The property settlement was already arranged, but the lawyer assured her he would not take part in something which was not fair and just. She told the lawyer she thought she deserved something after 10 years of marriage and he suggested $1,000 in cash, payable in installments, to which she agreed. Under the proposed agreement she was to have custody of Paul during the school term. The lawyer suggested $50 a month for the support of the child, during that time, to which she also agreed. She did not at the time think these amounts were "fair" but was anxious to end the unpleasant situation and had no knowledge of her rights in the absence of such an agreement.

On April 24, both parties visited the office of the lawyer. Defendant read the agreement and signed it, after obtaining a promise that the letter would be returned to her, if she did so. This promise was made and later kept. By the terms of the property agreement plaintiff kept the home, a Buick car, his life insurance policies, and most of the household furnishings. Defendant received, in addition to the $1,000, a typewriter, a sewing machine, and all of the linens. Plaintiff also waived any rights in her social security benefits. Defendant had understood at her first meeting with the lawyer that the property agreement would not cover household furnishings.

After defendant had signed the property agreement and a deed of her interest in the house, the lawyer told her to

come in later and sign an answer in the divorce action and a stipulation waiving further notice, explaining that this would prevent the necessity of the sheriff serving papers at her home. She did not realize at that time that there was going to be a hearing in open court with sworn testimony and witnesses against her.

The lawyer did not tell her it was her privilege to have independent counsel, or suggest that she get independent counsel. Under cross-examination the lawyer conceded that he never told her what her rights would have been under the law, with respect to support for herself, rights in community property, custody of a child of tender years, etc. He did not tell her what was meant by "joint custody" and did not tell her how much of the property was legally community property. The lawyer was thereafter attorney of record for plaintiff in the divorce proceeding.

After signing the property agreement defendant remained a while longer in the home, carrying on her regular duties as mother and wife. She had suggested they try a temporary separation to see if they could avoid a divorce but plaintiff insisted that they go ahead with the property agreement and the divorce action. On June 13, the day the complaint was to be filed, plaintiff called her from the lawyer's office and asked if she would still like to try and make a "go of it." She thought it was strange that he called from the lawyer's office, and said that since he had made the decision to have a divorce and had refused a bona fide trial separation they might as well go ahead.

Defendant left the home on June 15, after which she stayed with friends, attended the Mills College summer session, and in September obtained a job with a school.

Although the evidence was conflicting, testimony was given that during April, May and June defendant was in poor health, and under visible physical and mental strain. She lost about 10 pounds during those months and had occasional emotional breakdowns.

The son, Paul, was with plaintiff during the summer months and in September started in at the school where defendant had obtained a job. After being there a month he visited plaintiff on a week end. On October 12th, plaintiff told defendant that Paul did not wish to return to the school, and that plaintiff would not return him.

The record supports the conclusions: (1) that defendant may have a defense to the divorce action or even grounds for

a divorce in her favor—it is not necessary to detail the facts set forth in her affidavit as to plaintiff's conduct towards her during their married life; (2) that she signed the property settlement (which on its face appears to be unfair to her) partly through fear of her husband's use of the intercepted letter and fear that her son would be taken from her; (3) that defendant was not represented by independent counsel, nor was she advised that she was entitled to such, nor as to her legal rights with reference to the community property or the custody of the child; (4) that she waived her right to contest the divorce action and signed the property settlement agreement without a full knowledge of the effect of both actions, due to her lack of legal advice and her condition of mental and physical exhaustion; (5) that the property settlement agreement which the court approved without examining, is not fair or just to her.

While there is evidence that would indicate, as charged by plaintiff, that defendant was completely aware at all times of what she was doing, and merely changed her mind after the judgment, as was the case in *Elms* v. *Elms,* 72 Cal.App.2d 508 [164 P.2d 936], cited by plaintiff, we cannot say as a matter of law that such construction of the facts is the only reasonable one.

While it frequently occurs in negotiations between husband and wife for settlement of property matters that one attorney serves both parties, it has been said "that in fairness to both parties concerned, when negotiations for settlement of property matters between husband and wife are on hand, both parties should at all times be represented by counsel." (*Swart* v. *Johnson,* 48 Cal.App.2d 829, 833 [120 P.2d 699].) And, as we said in *Davidson* v. *Davidson,* 90 Cal.App.2d 809 [204 P.2d 71], where the situation was quite different from that in the case at bar (p. 819): "It is, of course, much better for all concerned if both sides have independent counsel, but there is no way by which a litigant can be compelled to secure an attorney. Where the attorney for one of the parties is compelled to deal directly with the other litigant he is under a most strict duty to deal with such litigant fairly and objectively, and the agreement will be scrutinized most carefully to be sure that there has been no overreaching." At least the attorney should make sure that each party is fully advised as to his or her legal rights and to the right to independent counsel.

At the time of the marriage, the title to the home was

in plaintiff, subject to a $4,600 mortgage. The home cost about $6,600. The loan was later refinanced to get money for "ordinary expenses and for expenses at the birth of the child." The loan was paid off with community funds. Plaintiff was evasive when asked concerning its present value. Defendant in her cross-complaint alleged the property to be worth $30,000. Plaintiff admitted that one person had stated that she would give $20,000 for it, although he apparently felt the statement was not made in good faith. It is obvious that the community interest of defendant in the property is worth far more than the $1,000 she received from plaintiff.

The construction given by the trial court is equally as reasonable as that urged by plaintiff, if not more so. Here the plaintiff received the bulk of the community property from a wife who, while under mental stress and physical exhaustion, and without legal advice, agreed to the distribution without realizing the full import of her acts. Having in mind, in addition to these facts, that the state has an interest in the proceeding, that the court did not consider the fairness or unfairness of the property settlement agreement, that the custody of a child is involved, it cannot be said that this is one of those "extreme" cases which the court in *Hecq* v. *Conner,* 203 Cal. 504, at page 509 [265 P. 180], said are the only cases in which an appellate court will interfere with the action of the trial court in determining that the facts showed that the defendant had permitted the judgment to be taken against her through excusable neglect to assert her rights.

### TIME OF APPLICATION

■ Plaintiff takes the position that as 119 days elapsed from the entry of the judgment, defendant by that fact alone must be held not to have made her application for relief within the "reasonable time, in no case exceeding six months" referred to in section 473, and cites *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523 [190 P.2d 593]. That was not a divorce case. In determining whether the application for relief in a divorce case was brought in a reasonable time within the six months' period, the trial court has a much wider discretion than in other cases. Here the evidence justifies the conclusion that the effect of defendant's acts in entering into the property settlement agreement and in not opposing the divorce action, was not realized by her until the time when the plaintiff refused to return the child to her as agreed, and then she realized that the fact that she had permitted plaintiff to obtain a

divorce against her and to keep the home was to be used as a weapon against her in the contest for the custody of the child. She had not contested the action for fear of losing the child, and now for the first time she realized that her action might be the means of her losing the child. Under the circumstances of this case, we cannot say that her delay in realizing the effect of her acting without advice as to her legal rights was an unreasonable one.

### PROPERTY SETTLEMENT AGREEMENT

The only reference to the property settlement agreement in the judgment is: "The property settlement agreement between the parties, dated April 24, 1947, is hereby approved." Plaintiff contends that by reason of this language the agreement is no part of the court's decree, and that to set the agreement aside will require an action in equity, citing *Howarth* v. *Howarth*, 81 Cal.App.2d 266 [183 P.2d 670], as authority therefor. The case is not in point. There the wife was endeavoring to enforce the provisions of the property settlement agreement. The court held that the agreement had not been incorporated into the decree so as to preclude subsequent action on the agreement itself. There is nothing in the case concerning setting aside the agreement. In a divorce action the court has the power to approve or disapprove a property settlement agreement, or to set aside the agreement if the facts justify it. (*Lorraine* v. *Lorraine*, 8 Cal.App.2d 687 [48 P.2d 48].) Incidentally, defendant testified that plaintiff agreed that the property settlement agreement was to be made a part of the decree. Now he attempts to take advantage of his failure to keep that agreement.

The order setting aside the judgment is affirmed.

Peters, P. J., and Ward, J., concurred.