[Civ. No. 17639.  Second Dist., Div. One.  Nov. 6, 1950.]

MARIA DE LA CINTA POVEDANO FIELD et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Kenny & Morris and Joseph W. Aidlin for Appellants.

Freston & Files, Eugene D. Williams and Ralph E. Lewis for Respondent.

312

DRAPEAU, J.—Plaintiff, Maria de la Cinta Povedano Field, the widow of Walter J. Field, seeks to recover certain personal property having an approximate value of $42,000 which is held by defendant as trustee under a declaration of trust. The children and grandchildren of Mr. and Mrs. Field, beneficiaries under the trust, are joined as parties plaintiff.

When the declaration of trust was executed in January of 1928, the trustor, Walter J. Field, placed in trust four insurance policies on his own life, two of which were issued in 1887 and 1894, respectively, and the other two in 1900. The trust provided that after the death of trustor, the net income from the corpus should be paid to the widow and seven named children in equal shares, and upon the death of the survivor of the widow and such children, the net estate should be divided equally among the then living grandchildren. The trust also contained spendthrift provisions prohibiting the transfer of any interest therein by the beneficiaries, and a clause that if any provision of said trust be judicially declared invalid, the remaining provisions should be effective nevertheless.

At the time the declaration of trust was executed, the wife of the trustor, plaintiff Maria de la Cinta Povedano Field, by a writing attached thereto declared that she had read and was fully acquainted with the contents of the trust, and in consideration of the benefits thereby conferred upon her, consented to, approved, ratified and confirmed the same, expressly waiving all of her community interest in the insurance policies.

After the trustor's death in 1931, his estate was probated, said plaintiff Maria being the sole distributee by virtue of assignments to her from the seven children. The insurance policies were collected and the proceeds invested by defendant trustee in stocks and bonds.

The complaint alleges that plaintiff Maria was born in Spain in 1878; that she and decedent trustor were married in Costa Rica in 1902 and moved to California in 1920, bringing the insurance policies with them; that the premiums thereon were paid out of joint earnings and accumulations of the parties; that her husband and other members of her family conversed with Maria in Spanish; that she did not learn to read or understand the English language until 1932. Also, at the time she signed the waiver, no explanation was given her of its legal effect, her husband stating "that her signature was a mere technical formality" in the transfer of property entirely owned by him and "that she had no right

in or control of the life insurance policies''; that on December 24, 1948, the seven children assigned to her any interests they had in the trust estate. The prayer is for a transfer to Maria of the bonds and certificates of stock held in trust, or their value, the sum of $42,000.

Plaintiff Maria testified that when the waiver was executed her husband "had me sign, he said 'It is the right thing' and I made it. He always say, 'You should sign,' I did. That is all. He didn't explain anything in Spanish." With respect to other documents "he always said to me, this paper I like, and you sign, but I never know what kind of paper it was." Also that he never discussed the life insurance policies with her; community property law nor her community interest.

On cross-examination, Maria testified that she agreed without question to everything her husband did with reference to the business of the family. "Anything he asked that I sign, I did it. . . . he didn't tell me anything." In answer to the question: "Then your testimony is, so far as this trust is concerned, Mr. Field didn't talk with you about it at all?" Mrs. Field replied: "Absolutely."

The trial court made the following findings of fact favorable to appellants: (1) That the premiums on the life insurance policies were paid out of community property from July, 1920; (2) That when Maria signed the consent to the declaration of trust, no explanation was given her by her husband "relative to said document or its legal effect"; (3) That the children executed the purported assignments of their interests in the trust.

But, based upon these and other findings, the court concluded: (1) That Maria's consent to the trust "was given with her full knowledge and consent and not by reason of any misrepresentation or other improper conduct on the part of her husband"; (2) That the purported assignments by the beneficiaries of the trust were void and ineffective because prohibited by the terms of the declaration of trust; (3) That appellants have been guilty of laches and therefore are barred from maintaining the instant action.

From the ensuing judgment in favor of defendant, plaintiffs appeal.

It is urged by appellants that the doctrine of laches does not apply here because no prejudice has resulted to the trustee complaining of the delay.

As a matter of fact, it appears that respondent bank, instead of being prejudiced by appellant's inactivity, has benefited thereby. For many years trustee's fees have accrued to it by reason of Maria's delay in pressing her claim.

On the subject of laches, it was stated by this court in *Swart* v. *Johnson*, 48 Cal.App.2d 829, 833 [120 P.2d 699], quoting from *Cahill* v. *Superior Court*, 145 Cal. 42, 46 [78 P. 467]:

" 'Laches is defined as "Such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." . . . "In determining what will constitute such unreasonable delay, regard will be had to circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant, or of other persons, have been prejudiced by such delay." . . . The doctrine of laches is not technical and arbitrary and is not designed to punish a plaintiff. It can only be invoked where a refusal would be to permit an unwarranted injustice. Whether or not the doctrine applies depends upon the circumstances of each case.' (*Hiett* v. *Inland Finance Corp.*, 210 Cal. 293, 300 [291 P. 414].)"

The record herein discloses that appellant Maria was unacquainted with the English language until after trustor's death; that she relied entirely upon her husband's judgment in business affairs; that he never explained to her the legal effect of her consent and waiver; that she never had any independent advice.

In such circumstances, the evidence is insufficient to charge Maria with laches. In fact her own testimony amply supports an inference that she completely failed to understand the legal effect of the instrument in question.

As said in *Swart* v. *Johnson, supra* (48 Cal.App.2d 829, 833): ". . . This situation illustrates a fact which should be evident to all members of the bar of this state—that in fairness to both parties concerned, when negotiations for settlement of property matters between husband and wife are on hand, both parties should at all times be represented by counsel."

In any event, a certain percentage of the proceeds from the insurance policies constituted community property, since the premiums thereon from 1920 to 1931 were paid with funds of the community. (*McDougald* v. *First Fed. Trust*

*Co.,* 186 Cal. 243, 244 [199 P. 11].) Failure to compute and find the proper shares thereof was error.

The findings and the judgment are not supported by the evidence.

For the reasons stated, the judgment is reversed.

White, P. J., and Doran, J., concurred.