[S. F. No. 20341. In Bank. Apr. 22, 1960.]

REBECCA P. WOLSTENHOLME, Appellant, v. CITY OF OAKLAND et al., Respondents.

---

*Assigned by Chairman of Judicial Council.

Albert M. Bendich for Appellant.

John W. Collier, City Attorney, and Frederick M. Cunningham, Deputy City Attorney, for Respondents.

McCOMB, J.—Petitioner appeals from a judgment which denied her application for a writ of mandate directing respondents to reinstate her to the position of senior librarian of the Library Department of the City of Oakland, California.

*Facts*: Petitioner was employed by respondent library board from January 1949 until November 9, 1954, at which time she was discharged from her position as senior librarian by the board of library directors. The board operates and manages the Oakland Free Library and had jurisdiction over petitioner's employment.

On September 20 and 23, 1954, hearings were had before the board with respect to petitioner's qualifications and suitability for public service.

Thereafter, on November 9, 1954, petitioner was discharged by resolution of the board on the basis of insubordination and misconduct in refusing to answer certain questions which she had been asked. On November 30, 1954, pursuant to the provisions of the charter of respondent municipality, petitioner

appealed said discharge to the Civil Service Board of the City of Oakland, which board upheld the decision of respondent library board. On June 6, 1956, one year and seven months after her discharge, petitioner filed the present proceeding in the Superior Court of Alameda County. The trial court found that her delay in filing the instant proceeding was unreasonable and unjustified; and that thereby respondents were irreparably prejudiced.

This is the sole question necessary for us to determine: *Is the trial court's finding that petitioner was guilty of laches in instituting the present proceeding sustained by the evidence?*

*Yes.* ▪ (1) Public policy requires that an employee of a public body who claims to have been improperly or illegally discharged must act with the utmost diligence in asserting his rights. (*Hicks* v. *City of Los Angeles*, 133 Cal. App.2d 214, 219 [3] [283 P.2d 1046] [hearing denied by the Supreme Court]; *Newman* v. *Board of Civil Service Comrs.*, 140 Cal.App.2d 907, 909 [1] [296 P.2d 41] [hearing denied by the Supreme Court].)

▪ (2) It is presumed that where one has been dismissed from an active position in the public service, someone else has been chosen to take his place. (*Hayman* v. *City of Los Angeles*, 17 Cal.App.2d 674, 680 [62 P.2d 1047] [hearing denied by the Supreme Court].)

▪ (3) If a discharged public employee delays unreasonably in bringing an action to obtain reinstatement, prejudice is presumed. (*Newman* v. *Board of Civil Service Comrs.*, *supra*, at 910 [3] et seq.; *Corcoran* v. *City of Los Angeles*, 136 Cal.App.2d 839, 842 [6] [289 P.2d 556].)

▪ Applying the foregoing rules to the present case, the record discloses the following: On November 9, 1954, petitioner was discharged from her public employment. Thereafter the library board filled the vacancy created by petitioner's discharge. She did not file the present action until June 6, 1956, which was one year and seven months after her discharge. The trial court found that this delay was unreasonable, that respondents were thereby irreparably prejudiced, and that petitioner was guilty of laches. Petitioner knew on November 9, 1954, of respondents' acts which she immediately claimed were "wrongful." Her only excuse for delay in filing the present action was that her counsel believed that the case of *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816 [285 P.2d 617] (cert. denied, 351

U.S. 915 [76 S.Ct. 708, 100 L.Ed. 1448]), would determine her rights in the instant case.

Relative to the delay in filing her petition in the present case, petitioner testified as follows: "DIRECT EXAMINATION. BY MR. SPEISER: Q. Mrs. Wolstenholme, subsequent to your discharge by the Library Board and the affirmation of that discharge by the Civil Service Board do you recall any instances in which you called me and asked me concerning the filing of a suit in court on your behalf?

"A. Well, it took me about six months to get over the shock then I started thinking about it. I thought well, something should happen, and I do recall, I can't say specifically whether it was exactly six months, but I do recall calling you, Mr. Speiser at your home. As a matter of fact, I couldn't reach you at the office and at that time you told me that you were sort of waiting for the outcome of the Steinmetz case in Southern California."

It thus appeared from petitioner's own testimony that before any thought in her mind to file the instant proceeding in mandamus arose, she delayed "about six months" and then "started thinking about it." The instant proceeding was commenced on June 6, 1956, about a month and a half after the final decision in *Steinmetz* v. *Board of Education, supra.* Thus, it appears that the total extra delay was 7½ months.

Such delay is not the "utmost diligence" with which a public employee claiming wrongful discharge must act. It is a delay unexplained, from which prejudice to the public employer is presumed. (*Newman* v. *Board of Civil Service Comrs., supra,* 140 Cal.App.2d 907, 910 [3] et seq.; *Corcoran* v. *City of Los Angeles, supra,* 136 Cal.App.2d 839, 842 [6].)

The foregoing evidence clearly supports the questioned finding of the trial court.

In the instant case the delay of petitioner in bringing her action was longer than in the Hayman case, *supra* [9 months]; in *Kimberlin* v. *Los Angeles City High School Dist.,* 115 Cal.App.2d 459 [252 P.2d 344] [12 months]; in *Campbell* v. *City of Los Angeles,* 47 Cal.App.2d 310 [117 P.2d 901] [15 months]; in *Donovan* v. *Board of Police Comrs.,* 32 Cal. App. 392 [163 P. 69] [16 months]; in *Newman* v. *Board of Civil Service Comrs., supra* [18 months]; or in *Jones* v. *City of Los Angeles,* 120 Cal.App.2d 858 [262 P.2d 37] (hearing denied by the Supreme Court) [about a year and a half].

It appears that petitioner waited 19 months from the date

on which she was discharged before instituting this action. Under the authorities cited, petitioner's cause of action is barred by laches, since the trial court's finding that there was laches and that the delay in filing the present proceeding was unreasonable and unjustified was fully sustained by the evidence.

In view of our conclusions, it is unnecessary to discuss other questions presented in counsels' briefs.

The judgment is affirmed.

Schauer, J., Spence, J., and White, J., concurred.

GIBSON, C. J.—I dissent.

This case presents three questions: (1) Is plaintiff barred by laches? (2) Was the field involved in this litigation occupied by state law to the exclusion of local regulation? (3) If the field was so occupied, is there nevertheless a basis for upholding plaintiff's dismissal?

The majority opinion, having determined the first of these questions adversely to plaintiff, has found it unnecessary to consider the others, which is unfortunate because matters of public importance are left unresolved. I am of the view that the conclusion reached with respect to the question of laches is incorrect and that the other two questions should be decided in favor of plaintiff.

The defense of laches depends not only on a plaintiff's delay in asserting a right but also on an injury to the defendant, and it has long been settled that mere delay in commencing an equitable proceeding without a showing of inequitable conduct or prejudice suffered thereby is not sufficient to bar the action. (*Phoenix Mutual L. Ins. Co.* v. *Birkelund,* 29 Cal.2d 352, 363 [175 P.2d 5] ; *Allen* v. *California Mutual B. & L. Assn.,* 22 Cal.2d 474, 488 [139 P.2d 321] ; *Austin* v. *Hallmark Oil Co.,* 21 Cal.2d 718, 735 [134 P.2d 777] ; *Alexander* v. *State Capital Co.,* 9 Cal.2d 304, 313 [70 P.2d 619] ; *Brownrigg* v. *deFrees,* 196 Cal. 534, 538-539 [238 P. 714] ; *Newport* v. *Hatton,* 195 Cal. 132, 148 [231 P. 987] ; *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 242-243 [193 P. 243] ; *Cahill* v. *Superior Court,* 145 Cal. 42, 46-47 [78 P. 467].) The defense is not designed to punish a plaintiff but may be invoked only where a refusal would permit an injustice. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 449 [182 P.2d 557] ; *Hiett* v. *Inland Finance Corp.,* 210 Cal. 293, 300 [291 P. 414] ; *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610, 632 [32 P. 600].)

About a year and a half elapsed between plaintiff's dismissal and the commencement of this proceeding. The explanation she gave was that on advice of counsel she had awaited the outcome of *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816 [285 P.2d 617] (cert. den. 351 U.S. 915 [76 S.Ct. 708, 100 L.Ed. 1448]), and, although not entirely clear, the majority opinion appears to concede that such an explanation would justify all but seven and a half months of the delay. It appears, however, that, apart from the question whether plaintiff's delay was or was not justified, there was no showing that defendants were prejudiced under the undisputed facts. Plaintiff did not seek to recover back pay and at the trial offered to waive any claim thereto. It was also established that all positions of senior librarian, which was the position held by plaintiff, were filled within four and a half months after her dismissal was affirmed by Oakland's civil service board but that, when this proceeding was instituted and for two months thereafter, a vacancy for a senior librarian existed. In view of the vacancy and plaintiff's waiver of back pay, there was no danger here that the library board would be required to discharge someone who had been hired in her place or to pay twice for the same services. The majority opinion, which does not mention the vacancy or the waiver, relies on the theory that prejudice to a public employer is to be presumed where there is an unexplained delay by a discharged employee in seeking reinstatement.

No statutory basis for the presumption of prejudice relied upon in the majority opinion has been cited or found. A presumption is evidence to be weighed by the trier of fact along with other circumstances, and it may prevail against positive evidence adduced against it and is sufficient by itself to warrant a judgment even where a showing to the contrary has been made. (*Scott* v. *Burke*, 39 Cal.2d 388, 394, 397-401 [247 P.2d 313]; *Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 549 [299 P. 529].) In view of the serious consequences involved, no presumption should be created judicially unless there are compelling reasons for doing so.

The decisions cited in the majority opinion seek to justify the presumption of prejudice on the ground that, because public work must be performed and the discharged employee's position must be filled immediately, reinstatement will require the employing agency to displace another em-

ployee and to make a double payment consisting of back pay to the discharged employee and the salary received by his replacement. (*Newman* v. *Board of Civil Service Comrs.,* 140 Cal.App.2d 907, 909 et seq. [296 P.2d 41]; *Corcoran* v. *City of Los Angeles,* 136 Cal.App.2d 839, 842 [289 P.2d 556].) However, such reasoning assumes the existence of matters which, if true, are easily capable of being proved by the employing agency and which, as the present case forcefully illustrates, may in fact be untrue. In such circumstances there is no justification for creating a presumption which will remain in the case as evidence and will, without more, support a determination of laches irrespective of the showing made by the plaintiff.

The effect of the majority opinion is to establish an unwarranted exception to the general rule that prejudice, as well as delay, is essential to sustain the defense of laches. We have recently applied this rule in an action against a governmental body (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 459 [326 P.2d 484]), and I can see no reason to depart from it merely because a discharged public employee is the one who brings such an action. In the light of the established rule, the record before us compels the conclusion that plaintiff is not barred by laches.

This makes it necessary to consider whether the field involved in this case was occupied by state legislation to the exclusion of local regulation. Section 1028.1 of the Government Code, known as the Luckel Act, provided as follows at the time of plaintiff's dismissal: ''It shall be the duty of any public employee who may be subpenaed or ordered by the governing body of the state or local agency by which such employee is employed, to appear before such governing body, or a committee or subcommittee thereof, or by a duly authorized committee of the Congress of the United States or of the Legislature of this State, or any subcommittee of any such committee, to appear before such committee or subcommittee, and to answer under oath a question or questions propounded by such governing body, committee or subcommittee, or a member or counsel thereof, relating to: . . . (d) Questions as to present knowing membership of such employee in the Communist Party or as to past knowing membership in the Communist Party at any time since September 10, 1948. Any employee who fails or refuses to appear or to answer under oath on any ground whatsoever any such questions so propounded shall be guilty of insubordination

and guilty of violating this section and shall be suspended and dismissed from his employment in the manner provided by law."[1]

Plaintiff refused to answer 10 questions which related to membership in the Communist Party prior to September 10, 1948. She objected to such questions on the ground that the Luckel Act had occupied the field and that the date specified in the act was therefore determinative of her duty to answer. It is settled that, where a matter is of state-wide concern and the field has been fully occupied by statute, local regulation is invalid if it imposes additional requirements. (*Pipoly* v. *Benson,* 20 Cal.2d 366, 370-375 [125 P.2d 482, 147 A.L.R. 515]; *Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661, 665-668 [177 P.2d 558, 170 A.L.R. 225].) It is also settled that the loyalty of both state and local employees is a matter of state-wide concern and that state legislation prescribing a loyalty oath which public employees must take occupied the field to the exclusion of any oaths required by the particular employing agency. (*Tolman* v. *Underhill,* 39 Cal.2d 708 [249 P.2d 280]; *Bowen* v. *County of Los Angeles,* 39 Cal.2d 714 [249 P.2d 285]; *Fraser* v. *Regents of University of California,* 39 Cal.2d 717 [249 P.2d 283].) The reasoning underlying these decisions was that the Legislature, which had provided a general and detailed scheme regarding loyalty oaths, could not have intended employees to be subject to whatever requirements the employing agency might see fit to impose, that the loyalty of public employees was a subject calling for uniform treatment throughout the state, and that a multiplicity of oaths would make a travesty of efforts to secure loyal and suitable persons for government service. (*Tolman* v. *Underhill,* 39 Cal.2d at p. 713.)

Such reasoning is applicable to the Luckel Act. With respect to the matter in issue here, for example, the Legislature has specified a date in setting forth a general and detailed scheme as to the duty of public employees to answer, under threat of dismissal, questions relevant to loyalty, and it could not have intended that local employing agencies could disregard the date in examining employees on that subject. The Luckel Act fully occupied the field, and, insofar as the library board's questions relating to membership in the Communist

[1]Section 1028.1 of the Government Code was amended in 1957, and the changes made included substitution of the date October 3, 1945, for September 10, 1948.

Party were designed to test plaintiff's loyalty and referred to a time prior to September 10, 1948, her refusal to answer did not justify her dismissal.

Defendants argue that, even if the Luckel Act precluded testing plaintiff's loyalty by questions referring to a time before September 10, 1948, her dismissal can be justified on the theory that the questions were designed for another purpose as well, namely, to test plaintiff's veracity with respect to written oaths which she signed in 1950.[2] During the hearing before the library board plaintiff was not told that any question asked was directed at veracity, and there is nothing in the record to indicate that she was being questioned for this purpose. A person being examined by a governmental committee is not required to answer irrelevant questions and is entitled to have knowledge of the subject to which the questions are deemed pertinent. (*Cf. Watkins* v. *United States,* 354 U.S. 178, 208-209 [77 S.Ct. 1173, 1 L.Ed.2d 1273]; *Barenblatt* v. *United States,* 360 U.S. 109, 116-117 [79 S.Ct. 1081, 3 L.Ed.2d 1115].)

It is further argued that plaintiff's dismissal was warranted by her refusal to answer three questions which concerned a period subsequent to September 10, 1948. She declined to answer these questions upon advice of counsel that they were vague and unclear. Their subject matter was later dealt with in a series of more specific inquiries, all of which she answered, and on appeal to the Oakland Civil Service Board she asked for and was given permission to reply directly to the three questions.

I would reverse the judgment with directions to the superior court to enter judgment instructing the library board to set aside its decision.

Traynor, J., and Peters, J., concurred.

Appellant's petition for a rehearing was denied May 18, 1960. Gibson, C. J., Traynor, J., and Peters, J., were of the opinion that the petition should be granted.

---

[2]The two oaths contain statements, among others, that, within the preceding five years, plaintiff had not been a member of any organization advocating forceful overthrow of the government and that she had never been a member of the Communist Party.