[Civ. No. 18465. Fourth Dist., Div. One. Dec. 9, 1980.]

In re the Marriage of MASAKO and DAVID C. MOORE.
DAVID C. MOORE, Respondent, v.
MASAKO MOORE, Appellant.

**COUNSEL**

Margaret V. Turney for Appellant.

Mathews, Bergen & Potash and Howard K. Potash for Respondent.

**OPINION**

**WORK, J.**—Masako Moore appeals portions of a judgment of dissolution terminating her 17-year marriage to David.

The specific issue we address is whether the court abused its discretion in finding Masako knowingly waived her right to spousal support,

to any community interest in David's vested military retirement benefits, and to receive attorney's fees in this dissolution. We find a clear abuse of discretion and remand with directions.

## FACTUAL BACKGROUND

While in the military, David married Masako, a Japanese citizen, in Tokyo, Japan, May 9, 1958. Seventeen years, three days later, the parties separated, signing a separation agreement May 29, 1975, at the United States Naval Legal Services offices, Yokosuka, Japan. Neither party was represented by an attorney at that time. Among other matters the agreement purported to divide all property of the marriage, called for payment of spousal support to Masako for two years, her "waiver" of interest in David's vested military retirement and of any right to recover attorney's fees in connection with any "divorce, dissolution or separate maintenance."

In accordance with previously made plans, Masako and the minor child of the parties promptly moved to California, David and Masako's home from time to time during the marriage. Once here she found employment as a waitress and seamstress, the only occupations her lack of education and training allowed her to obtain.

Two years later David followed and filed the present action. Masako countered with a motion to set aside the separation agreement on the grounds of extrinsic fraud and reconciliation. Citing her inadequate command of English, the failure of any person to explain the nature and extent of her possible community interest in the military retirement, and her lack of intent to relinquish any support rights, Masako asked the court to find no waiver.

At time of trial, three years after separation, Masako was working three nights a week earning $320 a month gross. The court denied her motion and found her execution of the agreement to be a knowing waiver although Masako got a far less than equal portion of the community property.[1]

---

[1]The court entertained considerable discussion regarding the question of which country and/or state had jurisdiction over disposition of the property interests in the retirement. The court sidestepped this issue by simply finding a knowing waiver of rights without resolving the conflict of laws problem.

We note considerable effort on the part of David to eliminate California as the appropriate forum; however, he testified to filing for divorce in San Diego, California, approximately 1960 or 1961 during one of his frequent military stopovers in California. On remand this preliminary issue must be addressed.

In the absence of proof, the laws of a foreign jurisdiction are presumed to be the same as California. (*Christ* v. *Superior Court* (1931) 211 Cal. 593, 598 [296 P. 612].)

We examine the evidence in accordance with well-recognized principles.

 Waiver requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 343 [107 Cal.Rptr. 309, 508 P.2d 309].) There must be actual or constructive knowledge of the existence of the right to which the person is entitled. (*In re Walker* (1969) 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456].) The burden is on the party claiming a waiver to prove it by evidence that does not leave the matter doubtful or uncertain and the burden must be satisfied by clear and convincing evidence that does not leave the matter to speculation. (*City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104, 107-108 [48 Cal.Rptr. 865, 410 P.2d 369].) This rule particularly applies to cases involving a right favored in law such as, in this case, the right to retain lawful property entitlements and support.

 We recognize as a general proposition the law favors property settlement agreements untainted by fraud, compulsion or violations of confidential relationships between parties. However, where agreements are made without advice of legal counsel, the court must carefully scrutinize them to prevent inequities. (*Adams* v. *Adams* (1947) 29 Cal.2d 621, 628 [177 P.2d 265].)

This settlement agreement limits spousal support following a 17-year marriage to a 2-year term where the wife is marginally employable, lacking in a high school education, suitable for employment only as a seamstress or waitress, earning $320 per month gross. The agreement deprives Masako of any community interest in David's military retirement which the court found to be by far the major community asset. In order to insure little likelihood Masako would be able to defend whenever David finally got around to filing for dissolution, the agreement purports to waive any right to reimbursement for attorney's fees in such proceedings. Such a result is almost *Brantner*-like. (See Justice Gardner's colorfully descriptive analysis in *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416 [136 Cal.Rptr. 635].)

But, David demurs, *Brantner* involved no property settlement and in this case the court reviewed the settlement agreement, circumstances surrounding it and found no fraud or overreaching on his part. He contends the law favors property settlement agreements and the court properly upheld it without considerations of equity.

*Spousal Support*

 The court made no specific finding regarding spousal support. The closest it came was to comment "[s]he is earning money and working, [$320 gross per month] and even absent this agreement, it is rather doubtful that I would order it. At any rate, she has waived it after two years and I think the agreement should govern." Since the issue was decided solely on waiver, we look to see if in fact a waiver appears from the record. The entire reference to spousal support is contained in paragraph 6[2] of the separation agreement.

There is no express reference to any agreement not to extend the period of support or to any waiver of future support. Furthermore, the written findings of fact do not address the question of waiver except by the ambiguous reference, "the court finds that the respondent [*sic*] has fulfilled his obligation to pay spousal support."

In an analogous situation a unanimous Supreme Court held no waiver of right can be inferred from a written stipulation except where an intentional relinquishment of the known right is explicit, the terms and scope of the waiver are spelled out and the express reason for the waiver set forth. (*City of Ukiah* v. *Fones, supra,* 64 Cal.2d 104, 109-110.) In *Ukiah*, Justice Mosk referred favorably to the language of Justice Spence in *Estate of Coffin* (1937) 22 Cal.App.2d 469, 471 [71 P.2d 295] "It is well settled that the right to a family allowance is strongly favored in our law and that it will not be held to have been waived or relinquished except where the language relied upon clearly and explicitly manifests that intention. [Citations.] We find no such language in the stipulation above set forth. It clearly appears that the parties intended to stipulate for the payment of a family allowance 'at said rate for a period not to exceed ten months', but it is not at all clear that the parties intended that said stipulation should thereafter bind anyone either as to amount or as to time. If appellants intended that the stipulation should constitute a waiver by respondent of the right to any family allowance after the expiration of a period of ten months, there was at least uncertainty in the language employed to accomplish their purpose and 'any uncertainty in the language of the agreement will be resolved in favor of the right'. [Citation.]"

---

[2]"The husband shall pay to the wife the monthly sum of $300.00 for the support and maintenance of herself, for the period of 24 months beginning July 1975."

This reasoning is persuasive; paragraph 6 does not constitute a waiver.

■ However, apparently anticipating its reliance on the agreement might not withstand attack, the court made a specific finding that "aside from said agreement of the parties that spousal support for either party in this matter would not be indicated and that both parties are employed, in good health, and can provide for their own support." This finding binds this court unless it is an abuse of discretion. To support this finding the court specifically found David presently earns $1,335.60 per month gross on active military duty while Masako is employed three nights per week. However, the record also reveals Masako is responsible for maintaining a home and caring for the minor child of the parties, age 10 years, and employable only as a waitress or seamstress. It is uncontradicted her previous earning experience has been in periodic unskilled jobs and she had not completed a high school education. Masako's financial declaration shows monthly expenses for herself and the child exceed $900 a month; David lists his monthly expenses as approximately $1,050 a month. After subtracting $200 child support, David's net monthly retention is $878.43. On the other hand, assuming no deductions whatsoever were taken from Masako's gross income, she has access to a total of $520 per month to support herself and the child.

The Legislature has established certain factors to be considered by the court in determining reasonable spousal support. These are: "(1) The earning capacity...of each spouse....[¶](2) The needs of each party. [¶](3) The obligations and assets...of each. ¶(4) The duration of the marriage. [¶](5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in...[his or her] custody....[¶](6) The time required for the supported spouse to acquire appropriate education, training and employment. [¶](7) The age and health of the parties. [¶](8) The standard of living of the parties. [¶](9) Any other factors which it deems just and equitable." (Civ. Code, § 4801, subd. (a).)

Although the finding regarding Masako's good health is supported by the record, no other factor listed above justifies the court's failure to retain jurisdiction on the question of future spousal support. Retention of jurisdiction over spousal support in lengthy marriages is discussed at length in *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal. Rptr. 139, 573 P.2d 41]. There the Supreme Court cautions against ter-

minating jurisdiction unless the record "clearly indicates" the party asking support will be able to meet his or her financial needs in the future. The court is advised not to engage in speculation and to make its decision only on matters in the record.

While *Morrison* involved an actual grant of spousal support for a period of years with a definite cutoff date, its reasoning is equally persuasive where a court is asked to provide support in the first instance, and the court should award support and retain jurisdiction unless it specifically finds from the record the requesting spouse is able to "adequately provide for his or her needs." (*In re Marriage of Morrison, supra*, 20 Cal.3d 437, 453.) We doubt the adequacy of an income consisting of $320 per month gross with no evidence of any potential increase meets the adequacy standard. In any event, there is no substantial support in the record for the court's refusal to retain support jurisdiction. Placing the custody of the child with Masako while giving her community property of negligible value militates toward the retention of jurisdiction. (*In re Marriage of Kelley* (1976) 64 Cal.App.3d 82, 93-94 [134 Cal.Rptr. 259].)

### David's Vested Military Retirement

There are two relevant paragraphs in the separation agreement: "5. That all the property of the marriage of the parties including, among other things, all household goods and furnishings except one television set shall be the exclusive property of the wife; with the exception of the following listed items, together with husband's uniforms and personal items, which shall be the exclusive property of the husband: one National console television set and one 1971 Datsun Bluebird Sedan."

"13. Wife hereby waives all entitlement, of whatever nature, to husband's retirement income, now and forever."

■ The court found paragraph 13 was an express waiver of Masako's community property interest in David's retirement.

By finding an express waiver, the court sidestepped the issue of whether the retirement was to be disposed of pursuant to community property or separate property laws.[3] While we cannot decide the con-

---

[3]In California, vested military retirement benefits had been held community in nature to the extent accrued during marriage at least a year before David and Masako executed their agreement. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 595 [111 Cal.Rptr. 369, 517 P.2d 449].) This is still the law in spite of vigorous legal onslaught. (*Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10].)

flict of laws question on this record, we find the court abused its discretion in finding waiver.

David testified the military retirement was treated as "property of the marriage" even though listed separately in the agreement; the legal officer explained to Masako generally the community property law of California including its impact on military retirement.

However, in response to the court's questioning, David admitted Masako only "nodded" when the explanation was made, she never questioned the officer about it or engaged in any discussion before signing the agreement. When specifically asked by the court if Masako understood she was giving up her entitlement to one-half the retirement, David answered: *"she never asked any questions about it or brought it up; no sir."* (Italics added.)

David admitted he was aware his wife had a community interest in his retirement if California law applied, but did not discuss this with her.

There is no evidence anyone ever spoke to Masako regarding the nature and extent of her property interest in the retirement or of her options in how to receive those benefits.

Assuming arguendo California law applies, at the time of separation Masako's community share of the retirement is conceded to be more than $200 a month. Assuming each party lived to age 70, she would receive more than $64,000. The total value of all other marital property approximated $5,000. At best the disparity between the value of property received and that purportedly forfeited would warrant close scrutiny to insure each element of a knowing waiver is present.

Where, as here, Masako's future financial picture is bleak from the outset, it is difficult to conceive of any reason for her to relinquish her interest in the major asset which could augment her income for years or be converted to present value and received in cash. In the absence of even the proverbial evidentiary scintilla that Masako knew she had a 36.6 percent interest in a monthly retirement benefit exceeding $600 for as long as she and David lived, she cannot be held to have intentionally relinquished "'a known right after knowledge of the facts.'" (*City of Ukiah* v. *Fones, supra,* 64 Cal.2d 104, 107.)

■ Finally, we note marital settlement agreements may be set aside where the court finds them inequitable even though not induced through fraud or compulsion. (*Adams* v. *Adams, supra,* 29 Cal.2d 621, 628; *Gregory* v. *Gregory* (1949) 92 Cal.App.2d 343, 351 [206 P.2d 1122].)

We are hard pressed to conceive of any more inequitable provision than the one purporting to waive Masako's right to an award of attorney's fees in connection with this dissolution.[4]

By this provision Masako was induced to sign over the only financial leverage she had to defend a dissolution brought by David, or to enable her to bring one herself, in order to protect her interests. But worse, *she was persuaded to do so without any quid pro quo.* By a classic sleight-of-hand David convinced her to accept temporary spousal support to which she was independently entitled as consideration for this waiver.

The judgment of dissolution is reversed insofar as it affirms the separation agreement of May 29, 1975, denies spousal support and attorney's fees to Masako. This case is remanded for trial on these issues. In all other particulars the judgment is affirmed.

Cologne, Acting P. J., and Butler, J.,* concurred.

---

[4]"8. The parties agree that the wife's attorney's fees and costs shall be paid by wife ...and that the payments provided for in paragraph 6., [the two-year spousal support] shall be and are in full satisfaction of any and all obligation of husband for wife's attorney's fees in connection with a...dissolution...."

*Assigned by the Chairperson of the Judicial Council.