[No. A042715. First Dist., Div. Five. July 27, 1989.]

In re the Marriage of CAROLYN and PATRICK ALEXANDER.
PATRICK ALEXANDER, Appellant, v.
CAROLYN ALEXANDER, Respondent.

## COUNSEL

Eileen Ring and Joseph L. Strabala for Appellant.

James H. Disney for Respondent.

## OPINION

**KING, J.**—In this case we hold that 1986 amendments to Civil Code section 5125, subdivision (e), have not changed the rule enunciated in *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116], that "After relief is no longer available under Code of Civil Procedure section 473 for mistake, inadvertance, surprise or excusable neglect, an otherwise valid and final judgment may only be set aside if it has been obtained through extrinsic, not intrinsic, fraud." An inequitable division of community property, by itself, is insufficient to set aside such a judgment and the marital settlement agreement of the parties incorporated therein.

Patrick Alexander appeals from an order setting aside a marital settlement agreement and the property settlement portions of a dissolution judgment. We reverse.

Patrick and Carolyn Alexander separated in January 1986 after 21 years of marriage. Carolyn left the family home in Pleasant Hill and moved to Barstow. She told Patrick she wanted a divorce and wanted nothing from the marriage.

Patrick consulted a divorce manual for nonlawyers and prepared a marital settlement agreement consisting of six individual agreements and an interspousal grant deed. A month after the separation, Carolyn returned to the family home to retrieve some personal belongings. She reviewed the settlement documents with Patrick for approximately 10 minutes, and told Patrick for the first time that she wanted half the equity in the home. He accordingly retyped the individual agreement pertaining to the home. The documents were then executed by the parties before a notary public.

The six agreements provided the following: (1) the current equity in the family home was $53,000, of which Carolyn would receive half upon sale of the property within 12 years, (2) Carolyn had already received $4,000 as partial payment for the equity in the home, (3) Carolyn waived all rights to all savings plans or accounts held jointly with or separately by Patrick, (4) Carolyn waived any interest she held in Patrick's pension plan, (5) all furnishings, personal property and motor vehicles in the respective parties' possession would be their separate property, and (6) Carolyn waived all rights to spousal support. The interspousal transfer grant deed conveyed Carolyn's interest in the family home to Patrick as his separate property.

Patrick then filed a petition for dissolution of marriage. Carolyn defaulted. On August 20, 1986, the court rendered a dissolution judgment incorporating the marital settlement agreement. Neither party had obtained legal counsel.

Fifteen months later, on November 24, 1987, Carolyn, now represented by counsel, filed a motion to set aside the judgment and marital settlement agreement on the ground of extrinsic fraud. She asserted that she had been suffering from severe emotional distress (due to her daughter's illness with cancer and the breakup of the marriage) when she signed the settlement documents and was not conscious of their nature or seriousness, and had relied on statements by Patrick that she did not need an attorney and they should remain friends.

The court granted the motion and set aside the marital settlement agreement and the property settlement portions of the dissolution judgment. The court found that Carolyn "has not carried her burden of establishing

extrinsic fraud," but concluded that the marital settlement agreement should be set aside because it was inequitable and because Carolyn had not made a knowing waiver of her rights. The court relied on *In re Marriage of Moore* (1980) 113 Cal.App.3d 22 [169 Cal.Rptr. 619], which cited inequity and the lack of a knowing waiver as grounds for setting aside a marital settlement agreement before the rendition of a dissolution judgment.

■ Patrick correctly contends the court's express finding of no extrinsic fraud precluded the setting aside of the marital settlement agreement and judgment. This is because Carolyn did not file her motion within the six-month period prescribed by Code of Civil Procedure section 473 (hereafter section 473) for obtaining relief from a judgment due to mistake, inadvertence, surprise or excusable neglect. Once this six-month period elapsed, as we have previously held, the *only* ground for relief was extrinsic fraud. (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1068.) The court having expressly found Carolyn had failed to establish extrinsic fraud, there was no basis for granting relief, and the court erred in doing so.

The decision upon which the court relied, *In re Marriage of Moore, supra,* 113 Cal.App.3d 22, differs from the present case in a fundamental respect. In *Moore* the motion to set aside the marital settlement agreement was filed *before rendition of the dissolution judgment (id.* at p. 26), and thus contract defenses such as mistake and unconscionability were applicable. Here, in contrast, the motion was not filed until after the marital settlement agreement was incorporated into a judgment and after the six-month period for relief under section 473. ■ "Marital settlement agreements, once incorporated into a judgment, are no longer mere contracts and a showing of extrinsic fraud is required to set them aside. Thus, they become a hybrid, more like a judgment than a contract, and contract defenses such as mutual mistake are insufficient to set them aside." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1071.) Once a marital settlement agreement is incorporated into a judgment and relief is unavailable under section 473, a strong showing of extrinsic fraud is required to set aside the agreement. (*Ibid.*)

■ Carolyn insists that notwithstanding the court's express finding, there had actually been extrinsic fraud, in that Patrick induced her not to retain counsel, concealed the effect of the settlement documents, and concealed an employee stock plan. She is entitled to appellate review on this point for the purpose of determining whether the order was ultimately correct despite the improper grounds asserted by the court. (Code Civ. Proc., § 906.)

The court's express finding of no extrinsic fraud and the consequent implied rejection of these assertions by Carolyn are not subject to challenge, however, if supported by substantial evidence. (See generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278 et seq.) Such supporting evidence was present in Patrick's testimony and his declaration in opposition to the motion. The implied finding of no inducement to forego counsel was supported by Patrick's assertions that he merely suggested it would be less expensive and traumatic to proceed without counsel and did not threaten Carolyn or make any false representations to induce her not to see an attorney. Carolyn herself testified that Patrick never told her not to go to an attorney and she knew she had a right to see one. The implied finding of no concealment of the effect of the settlement documents was supported by Patrick's assertions that he spent 10 minutes going over the documents with her (Carolyn conceded this fact), asked if she had any questions concerning them, and advised her to get a copy of the divorce manual he had used to draft them. The implied finding of no fraudulent concealment of the employee stock plan (which Patrick admitted he did not "specifically" disclose to Carolyn, although it was included in a yearly summary sent to their home) was supported by Patrick's assertion that Carolyn said she wanted no community property arising from his employment.

Thus, notwithstanding Carolyn's contrary testimony, the court's finding of no extrinsic fraud was supported by substantial evidence, consisting of Patrick's testimony and declaration. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479] [testimony of a single witness, even a party, may constitute substantial evidence].) That finding is therefore not subject to challenge.

■ Amendments to Civil Code sections 5125 and 5127, effective January 1, 1975, changed the right to management and control of community property from the husband alone to the spouses equally. This also resulted in a change in the duty owed from that of a fiduciary to one of good faith. (See *In re Marriage of Stevenot, supra,* 154 Cal.App.3d at pp. 1067-1068.)

In 1986, after our decision in *Stevenot,* the Legislature amended Civil Code section 5125, subdivision (e).[1] The motion in this appeal was heard in

---

[1] Civil Code section 5125, subdivision (e), as amended reads: "Each spouse shall act in good faith with respect to the other spouse in the management and control of the community property in accordance with the general rules which control the actions of persons having relationships of personal confidence as specified in Section 5103, until such time as the property has been divided by the parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of the existence of assets in which the community has an interest and debts for which the community may be liable, upon request. The case law defining the standard of care applicable to Section 5103, but not the case law applicable to former Title 8

1987; thus we must also determine whether the 1986 amendment affects the following holding of *Stevenot* concerning postseparation duties: "Spouses no longer have a fiduciary duty to each other; however, they do have a duty to deal with the other in good faith with regard to the management and control of community property. This requires the disclosure of all community assets, but not their valuation unless the valuation or factors affecting the valuation are peculiarly within the knowledge of one spouse, and reasonable inquiry and use of discovery proceedings by the other spouse would fail to disclose them. Prior to the date of separation or the filing of a petition for dissolution, whichever occurs first, there exists a confidential relationship which imposes trust and confidence between spouses. However, upon separation or the filing of a petition for dissolution, the confidential relationship ends and the parties deal with each other at arms' length. Thereafter, as to community property, except for concealment of a community asset or nondisclosure of information as to value peculiarly within the knowledge of one spouse, both spouses may take positions favorable to themselves as to separate or community character of property and its valuation, and representations by one to the other in this regard are made without warranty. Once spouses negotiate at arms' length, or in an adversary manner, neither owes the duty to the other which would be owed if the parties had a confidential relationship. The duty to disclose the existence of community assets continues until there has been a division of all such assets." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1070.)

The 1986 amendment extended the "confidential relationship" duty of a spouse to act in good faith to the other spouse in the management and control of community property from separation until the property has been divided by the parties or the court. However, the amendment does not affect our disclosure holding in *Stevenot*. The good faith duty of disclosure remains, while the statutory duty of good faith arising from personal confidence in the management and control of community assets has been extended to the date the court or the parties divide the property instead of the date of separation.

Indeed, it appears from a comparison of our holding in *Stevenot* with the 1986 amendment to subdivision (e) that the Legislature had our holding in mind in enacting this amendment. The amendment does not change the

---

(commencing with Section 2215) of Part 4 of Division 3 of this code (as repealed by Chapter 820 of the Statutes of 1986) or Division 9 (commencing with Section 15000) of the Probate Code, applies to this section. In no event shall this standard be interpreted to be less than that of good faith in confidential relations nor as high as that established by former Title 8 (commencing with Section 2215) of Part 4 of Division 3 of this code (as repealed by Chapter 820 of the Statutes of 1986) or Division 9 (commencing with Section 15000) of the Probate Code."

good faith duty each spouse has to disclose the existence of community assets to the other until they have been divided. However, the amendment extends the statutory duty of good faith controlling persons having relationships of personal confidence in the management and control of community assets until the property is divided. This duty no longer ends upon separation. This is verified by an uncodified provision of the 1986 amendment which provides, "The amendments also extend case law by making express an obligation to disclose assets and obligations upon request prior to marital separation and by expressly maintaining the standard of care that controls management of community property prior to separation to the period after separation or dissolution of marriage so long as the property remains undivided by parties or a court." (Stats. 1986, ch. 1091, § 3, p. 3816.)

Thus, the general rule we established in *Stevenot* is unaffected by the 1986 amendments to Civil Code section 5125, subdivision (e). "After relief is no longer available under Code of Civil Procedure section 473 for mistake, inadvertance [*sic*], surprise or excusable neglect, an otherwise valid and final judgment may only be set aside if it has been obtained through extrinsic, not intrinsic, fraud." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1068.) The trial court's finding of no extrinsic fraud was determinative that Carolyn's motion should have been denied. Extrinsic fraud was required. Once the six-month period prescribed by Code of Civil Procedure section 473 has passed, an inequitable division of the community property, by itself, is insufficient to set aside a marital dissolution judgment and the marital settlement agreement of the parties incorporated therein.

Changing the names, we repeat the final paragraph from *Stevenot*: "In sum, we conclude that the record does not disclose that [Carolyn] was either deliberately kept in ignorance of the proceeding or fraudulently prevented by [Patrick] from presenting her claims. Any failure was due to her own failure to act diligently. Absent extrinsic fraud, it was error to set aside the default and interlocutory judgment of dissolution of marriage. As Justice Traynor stated, 'Relief is denied, however, if a party has been given notice of an action and has not been prevented from participating therein. He has had an opportunity to present his case to the court and to protect himself from mistake or from any fraud attempted by his adversary.' (*Kulchar* v. *Kulchar* [1969] 1 Cal.3d [467], 472 [82 Cal.Rptr. 489, 462 P.2d 16, 39 A.L.R.3d 1368].) [Carolyn] had her opportunity and failed to exercise diligence and take advantage of it." (*In re Marriage of Stevenot, supra,* 154 Cal.App.3d at pp. 1075-1076, citation omitted.)

The order is reversed. Patrick shall recover costs on appeal.

Low, P. J., and Haning, J., concurred.