T.C. Memo. 1997-443

UNITED STATES TAX COURT

ESTATE OF ARTHUR C. EDWARDS, DECEASED, KENNETH EDWARDS, EDWARD
EDWARDS AND JAMES EDWARDS, AS TRUSTEES OF THE ARTHUR C. EDWARDS
SETTLEMENT TRUST, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8214-93.              Filed September 29, 1997.

<u>Owen G. Fiore</u> and <u>Glenn M. Alperstein</u>, for petitioner.

<u>Debra Lynn Reale</u> and <u>S. Katy Lin</u>, for respondent.

MEMORANDUM OPINION

FAY, <u>Judge</u>:  This case is before us on petitioner's motion
for summary judgment pursuant to Rule 121.[1]  Respondent filed a

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect as of the date of decedent's
(continued...)

response in opposition to petitioner's motion.  Both petitioner and respondent submitted memoranda in support of their positions.

Respondent determined a deficiency in petitioner's Federal estate tax of $14,107,060.  The deficiency was due primarily to respondent's increased valuation of decedent's stock in his closely held corporations, as well as respondent's disallowance of certain deductions for claims against the estate.  The parties have resolved the valuation issues.

The disallowed deductions relate to various claims on decedent's closely held stock.  Specifically, Ann Goss, decedent's former wife, holds a claim to the income from the stock for her life, and his three children hold a claim to the remainder interest in the stock.  Respondent has conceded that the estate is entitled to a deduction for Ann Goss' interest in the stock.  Therefore, the issue for decision is whether petitioner is entitled to deduct the value of the decedent's children's remainder interest in the stock as a claim against the estate under section 2053(a)(3).

We may grant a motion for summary judgment under Rule 121 "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any

---

[1](...continued)
death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

material fact and that a decision may be rendered as a matter of law."  Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The moving party bears the burden of proving that there is no genuine issue of material fact and that a decision may be rendered as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986); <u>Preece v. Commissioner</u>, 95 T.C. 594, 597 (1990).

The facts presented below are stated solely for the purpose of deciding petitioner's motion for summary judgment.

<u>Background</u>

Some of the facts have been stipulated by the parties.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  A hearing on petitioner's motion for summary judgment was held on June 16, 1997, in Washington, D.C.

The decedent died on November 6, 1988.  He was a resident of California at that time.

Decedent was survived by his three children and his former wife, Ann Goss.  Decedent married Ann Goss in 1927, and they resided in California at all times during the marriage.  Decedent and Ann Goss separated in 1967, and formal divorce proceedings commenced on September 11, 1969.  At the time of the divorce proceedings, decedent and Ann Goss jointly owned 61.6 percent of the stock in Dunn-Edwards Corporation (the Company) and 40 percent of the stock in Highland Properties, Inc. (Highland Properties).

Decedent, at the time of the divorce, desired to maintain control of the Company. Ann Goss was not opposed to decedent's desire to run the Company, because she recognized that the Company had prospered under his stewardship. However, in return, Ann Goss demanded certain property rights that she may not have otherwise received in a dissolution proceeding, such as alimony that would continue after her remarriage. On March 6, 1970, in order to meet these goals, decedent and Ann Goss entered into a written property settlement agreement (the 1970 PSA) incident to the divorce proceedings. Pursuant to the 1970 PSA, Ann Goss received one-half of the jointly owned stock. In addition, she agreed to place her shares of stock in trust (the voting trust), and then execute a voting trust agreement in favor of decedent. Pursuant to the terms of the voting trust, decedent would be entitled to vote her shares of stock in the Company and Highland Properties for 21 years or until his death, if sooner. In return, decedent agreed to pay alimony that would not terminate upon her remarriage. Further, decedent and Ann Goss agreed to maintain their reciprocal will provisions. At that time, each of their wills provided that the stock in the Company and Highland Properties would pass, in trust, to the surviving spouse for life, with the remainder to the three children.

On March 10, 1970, decedent's marriage to Ann Goss was dissolved by a Los Angeles County Superior Court interlocutory order. The Los Angeles County Superior Court entered a final

judgment of dissolution of marriage on March 12, 1970 (the final judgment). The 1970 PSA was incorporated into the final judgment. At the time the final judgment was entered, each of the Edwards children was over 21 years old.

A disagreement between Ann Goss and decedent arose concerning some of the terms of the 1970 PSA. In order to resolve the disagreement, decedent, Ann Goss, their three children, and the Company entered into a second property settlement agreement on January 20, 1984 (the 1984 PSA). On June 6, 1984, a stipulation for modification of judgment and order thereon was entered by the California Superior Court (the 1984 court order). The 1984 court order incorporated the 1984 PSA into the final judgment in place of paragraph 14 of the 1970 PSA. Paragraph 14 had dealt with the reciprocal will provisions of petitioner and Ann Goss. In the 1984 court order, decedent was prohibited from modifying, without prior approval of the court, the Arthur C. Edwards settlement trust (settlement trust), a revocable living trust that he had created in 1981. Under the terms of the settlement trust, decedent was to receive the income from his stock in the Company and Highland Properties during his life; at his death, Ann Goss was to receive such income for life; and, at her death, the trust property was to be distributed to the three children.

On November 6, 1988, the date of decedent's death, the fair market values of decedent's interests in the Company and Highland Properties, respectively, were $18,113,960 and $106,184. Pur-

suant to the terms of the settlement trust, outlined supra, Ann Goss possessed an income interest in this property for her life. The parties have agreed that the fair market value of that income interest was $6,741,453.

After decedent's death, a Federal estate tax return was filed by the executors of decedent's estate. In the return, the executors claimed deductions for the value of Ann Goss' life interest in decedent's stock and the value of the Edwards children's remainder interest. Respondent, in the notice of deficiency, disallowed both deductions. Respondent has subsequently conceded that the claim of Ann Goss is deductible. The deductibility of the remainder interest of the Edwards children, however, is still in dispute.

## Discussion

Section 2053(a)(3) provides that the value of the gross estate is determined by deducting the amount of claims against the estate. Section 2053(c)(1)(A) limits the deduction for claims founded on a promise or agreement to the amount of claims that were contracted for full and adequate consideration. One purpose of this consideration requirement is to prevent decedents from reducing their gross estate through contractually arranged transfers that serve a "donative or testamentary intent." Estate of Huntington v. Commissioner, 100 T.C. 313, 316 (1993), affd. 16 F.3d 462 (1st Cir. 1994); see also United States v. Stapf, 375 U.S. 118, 130-133 (1963). However, liabilities imposed by law

and not founded on a promise or agreement are deductible from the gross estate regardless of the ability to show consideration. Sec. 20.2053-4, Estate Tax Regs.

A claim founded on a divorce decree is a liability imposed by law and deductible without regard to the limitations of section 2053(c)(1)(A). See Harris v. Commissioner, 340 U.S. 106 (1950); Estate of Robinson v. Commissioner, 63 T.C. 717 (1975). Petitioner asserts that the claim of the Edwards children is founded on the divorce decree and is therefore deductible as a claim imposed by law.[2] Respondent disagrees, arguing that the claim is founded on the 1970 PSA, not the divorce decree.

In order for the claim to be imposed at law, the divorce decree, rather than the agreement between the parties, must be the "operative element" of a claim. Estate of Satz v. Commissioner, 78 T.C. 1172, 1179 (1982). Whether the divorce decree is the "operative element" depends upon whether the divorce court has the power to vary the terms of the agreement between the parties--here the rights of the Edwards children vis-a-vis the stock. Harris v. Commissioner, supra at 109-110; Estate of Fenton v. Commissioner, 70 T.C. 263, 271-274 (1978). If the divorce court has the power to prescribe a property settlement

---

[2]Petitioner also asserts that the Edwards children's claim is supported by full and adequate consideration. At the hearing, the parties indicated that more facts needed to be developed before this alternative theory would be ripe for summary judgment. Consequently, we offer no opinion as to whether the Edwards children's claim is supported by adequate consideration.

with terms different from those agreed to by the spouses, then it is the decree that fixes the right of the spouses, and, under the rationale of <u>Harris v. Commissioner</u>, <u>supra</u>, any subsequent claim by a spouse is founded on that decree. <u>Estate of Fenton v. Commissioner</u>, <u>supra</u> at 272. The fact that a property settlement agreement is incorporated into the divorce decree is not determinative in ascertaining whether the decree is the operative element of a claim. <u>Id.</u>

Petitioner argues that the claim of decedent's children is based upon the final judgment because the 1984 PSA was incorporated into it. Petitioner notes that, where a marriage settlement agreement[3] is incorporated into a divorce decree, the Court of Appeals for the Ninth Circuit has stated: "A marriage settlement agreement loses its status as an independent contract when it is incorporated into a final divorce decree." <u>Spirtos v. Moreno</u>, 56 F.3d 1007, 1008 (9th Cir. 1995). Because the 1984 PSA was incorporated into the final judgment, under California law, the parties can only enforce the terms of the agreement through actions on the judgment, and not by actions on the 1984 PSA. See <u>Hough v. Hough</u>, 160 P.2d 15 (Cal. 1945); <u>In re Marriage of Umphrey</u>, 267 Cal. Rptr. 218 (Ct. App. 1990). Therefore,

---

[3]For the purposes of this opinion, the terms "marriage settlement agreement" and "property settlement agreement" are used interchangeably.

petitioner concludes that the claim of the Edwards children is imposed by law and deductible under section 2053(a)(3).

Petitioner's argument in this regard does not carry the day. The fact that the 1984 PSA was merged, or incorporated, into the final judgment is not dispositive of the critical issue before us. Our inquiry must focus on the extent of the California divorce court's power to modify the terms of the 1984 PSA before incorporating it into the final judgment.

In this regard, our examination of California law indicates that, absent exceptional circumstances, a California divorce court lacks the power to modify a property settlement agreement before incorporating it into a divorce decree. See Flynn v. Flynn, 265 P.2d 865 (Cal. 1954); Adams v. Adams, 177 P.2d 265 (Cal. 1947). The Court of Appeals for the Ninth Circuit has addressed this question in Gray v. United States, 541 F.2d 228 (9th Cir. 1976). In Gray, the decedent husband and his wife had entered into a property settlement agreement, whereby the husband agreed to maintain an insurance policy on his life, designating his wife as the beneficiary. Id. at 230. The husband died in a plane crash shortly after the divorce court had entered a divorce decree, wherein the court approved the property settlement agreement and ordered the parties to carry out its provisions. Id. The proceeds of the policy were paid directly to the wife; the executor included the proceeds in the gross estate and claimed a deduction for that same amount. Id. at 231. The

District Court held that the claim was founded on a divorce decree and thereby deductible under section 2053, and the Government appealed.  Id.

The Court of Appeals for the Ninth Circuit reversed the District Court.  The Court of Appeals for the Ninth Circuit agreed with the Government's position that a claim is founded on the court decree only where "the court entering the decree had the power to modify or alter the terms of the agreement."  Id. at 231.  The Court of Appeals, in concluding that the wife's claim was founded on the marriage settlement agreement, observed that "under California law a California court entering a divorce decree, in the absence of fraud, has no power to modify or alter the property agreement".  Id. at 232.  According to the Ninth Circuit, the fact that the divorce court ordered the parties to carry out the terms of the agreement only imposed an additional method for enforcing its terms and did not change the conclusion that the wife's claim was founded on the agreement.

Petitioner attempts to distinguish the present case by noting that the law relating to property settlement agreements has changed since the Ninth Circuit decided Gray v. United States, supra, and cites a number of cases where the divorce court altered the terms of a marriage settlement agreement.  See Adkins v. Adkins, 186 Cal. Rptr. 818 (Ct. App. 1983); Brennan v. Brennan, 177 Cal. Rptr. 520 (Ct. App. 1981); Moore v. Moore, 169 Cal. Rptr. 619 (Ct. App. 1980).  Petitioner's attempts to

distinguish the case at bar from Gray v. United States, supra, fall short.

In each of the above cases, the presence of exceptional circumstances, such as fraud or overreaching, gave the court grounds to set aside the agreements. See Adkins v. Adkins, supra at 822 (sufficient showing of extrinsic fraud for the court to set aside a marital settlement agreement where the husband, unable to read or write, signed the agreement based on his wife's misleading representations); Brennan v. Brennan, supra at 525 (sufficient showing of extrinsic fraud for the court to set aside a marriage settlement agreement where the wife, unrepresented by counsel, relied to her detriment on the advice of her husband and his attorney); Moore v. Moore, supra at 624 (wife's waiver of her interest in the community property set aside where she was not represented by counsel and spoke only limited English). Moreover, in each of these cases, the court set aside a property settlement agreement after a divorce decree had been previously entered. None of the cases involves a court's power to modify an agreement prior to entering the decree.

Petitioner makes the assertion that the property settlement agreement in Gray v. United States, supra, was based on the pre-1967 California law, which is not applicable to decedent. Specifically, petitioner claims that the agreement in Gray was a "pre-1967 Integrated Property Settlement Agreement" that was not incorporated into the divorce decree. However, petitioner has

not shown that any change in California law endowed the divorce court with power to alter the 1984 PSA prior to accepting it and incorporating it into the final judgment. According to a leading treatise, the law in California regarding a divorce court's power to modify a property settlement agreement before entering a decree has not substantially changed from the time Gray v. United States, supra, was decided. See 11 Witkin, Summary of Cal. Law, ch. XVI, sec. 296 (9th ed. 1990) (citing Adams v. Adams, 177 P.2d 265 (Cal. 1947)). We conclude that the California divorce court lacked sufficient power to modify the 1970 PSA and the 1984 PSA, and therefore the Edwards children's claim is founded on those agreements.

Petitioner has not demonstrated that it is entitled to judgment as a matter of law. Courts have often expressed reservations about extending the rationale of Harris v. Commissioner, 340 U.S. 106 (1950), to encompass transfers to the children of a decedent. See Rosenthal v. Commissioner, 205 F.2d 505 (2d Cir. 1953), revg. 17 T.C. 1047 (1951); Spruance v. Commissioner, 60 T.C. 141 (1973), affd. without published opinion 505 F.2d 731 (3d Cir. 1974); Estate of Hartshorne v. Commissioner, 48 T.C. 882 (1967), affd. 402 F.2d 592 (2d Cir. 1968); Estate of Keller v. Commissioner, 44 T.C. 851 (1965). In Rosenthal v. Commissioner, supra at 508, the Court of Appeals for the Second Circuit opined:

The rationale of both the Harris and Converse decisions rests basically on the divorce court's power, if not duty, to settle property rights as between the parties, either by adopting their own agreement as in the Harris case, or by having the matter litigated as in the Converse case. We do not find this rationale applicable to a decree ordering payments to adult offspring of the parties or to minors beyond their needs for support--the only payments with which we are now concerned, since that part of the taxpayer's undertakings necessary for the support of his children during their minority is concededly not taxable. [Citations omitted]. While neither the Nevada statute, Nev. Comp. Laws secs. 9462, 9463 (Supp. 1931-1941), [Fn. ref. omitted.] nor interpretive decisions indicate the precise limits of the divorce court's authority in this area, courts of other jurisdictions operating under similar statutes have been restricted in their power to make awards of property to children to amounts appropriate merely for the maintenance of minor children. [Citations omitted.] * * *. But since such a decree provision depends for its validity wholly upon the consent of the party to be charged with the obligation and thus cannot be the product of litigation in the divorce court, we do not consider the rationale of the Harris decision applicable to the present case. We therefore conclude that the arrangements here made for the taxpayer's daughters beyond their support during minority do not obtain exemption from the federal gift tax by simply receiving the court's imprimatur. * * *

Rosenthal v. Commissioner, supra at 508. Like the taxpayer in

Rosenthal, petitioner has not demonstrated that the California

divorce court had the power to modify the provisions of the

property settlement agreements that dealt with the agreed-upon

transfers to the Edwards children. Further, significant policy

concerns are raised by expanding the rule in Harris v. Commis-

sioner, supra, to cover transfers made to a spouse's children.

As we have noted: "To construe the statute as suggested by

petitioner would open a means for a divorcing parent to transfer

property to his adult children free of both gift tax and estate tax".  Estate of Hartshorne v. Commissioner, supra at 895 (quoting Estate of Keller v. Commissioner, 44 T.C. 851, 860 (1965).

Petitioner has not cited a case wherein we have expanded the rationale of Harris v. Commissioner, supra, and applied it to property transfers to children on the theory that the transfers were founded on a divorce decree.  In fact, when faced with the contrary authority cited above, petitioner merely puts forth an argument that it is up to the legislature, not the courts, to cure any abuse of the laws.  This argument does not persuade us that petitioner is entitled to judgment as a matter of law. Accordingly, we conclude petitioner is not entitled to summary judgment.

To reflect the foregoing,

An order denying petitioner's motion for summary judgment will be issued.